**Lloyde E. HOWARD, Plaintiff-Appellant,**

**v.**

**GROUP HOSPITAL SERVICE, an Oklahoma Corporation, d/b/a Blue Cross and Blue Shield of Oklahoma, Defendant-Appellee.**

**No. 82–1397.**

United States Court of Appeals,
Tenth Circuit.

Aug. 6, 1984.

Donald R. Wilson of Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Okl. and Porta, Bass & Bass, El Reno, Okl., for plaintiff-appellant.

E. Bryan Henson of Chapel, Wilkinson, Riggs, Abney & Henson, Tulsa, Okl., for defendant-appellee.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiff Lloyde E. Howard brought suit against Group Hospital Service, d/b/a Blue Cross and Blue Shield of Oklahoma (Blue Cross), in an Oklahoma state court for damages in tort and contract resulting from Blue Cross' failure to pay claims under a Federal Employee Health Benefits Program (FEP) medical insurance policy. Blue Cross refused to pay a portion of claims made for treatment of Howard's wife for nervous and mental problems on the basis that there was no medical necessity for the treatment. Blue Cross removed the case to the United States District Court, alleging federal question jurisdiction under 28 U.S.C. § 1441(b). The federal district court denied plaintiff's motion to remand the case. Howard appeals from a jury verdict awarding him $1,649.00. The cause was submitted on the briefs by agreement of the parties. Because we find that the trial court did not have subject matter jurisdiction, we consider only this jurisdictional issue and order that the case be returned to the trial court for remand to the state court.

Under 5 U.S.C. §§ 8901–13 the Office of Personnel Management (OPM) contracts for and approves health benefit plans covering federal employees. The federal

government subsidizes the subscription charge, but never pays more than seventy-five percent of a participant's costs. 5 U.S.C. § 8906(b). Blue Cross has a contract with the OPM setting forth an approved plan. Howard chose the Blue Cross option and hence is a third party beneficiary of the contract between Blue Cross and the federal government. He is also a contracting party because he pays for medical coverage.

Blue Cross argues, citing *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), that because a government agency is a party to the FEP contract, federal law should apply to the interpretation of the medical necessity provision to promote uniformity of decision and interpretation of the contract. In *Clearfield* the federal government brought suit seeking reimbursement for funds paid to Clearfield Trust Company. Clearfield, as agent for J.C. Penney Company, negotiated a government check issued to an individual without knowledge that the payee's endorsement had been forged. The district court applied Pennsylvania law to bar the government from recovering because the government had unnecessarily delayed in giving notice of the forgery to Clearfield Trust. The Supreme Court held that the district court erroneously applied state law because the "rights and duties of the United States on commercial paper which it issues are governed by federal rather than local law." *Id.* at 366, 63 S.Ct. at 575. The Court stated, "The authority to issue the check had its origin in the Constitution and the statutes of the United States and was in no way dependent on the laws of Pennsylvania or of any other state." *Id.*

In *Clearfield* the United States was a party to the litigation, and an important question affecting its liability in many similar situations was at stake. We believe the instant case is more like *Miree v. DeKalb County*, 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977), in which the Supreme Court discussed the scope of *Clearfield*. In *Miree* the petitioners—the survivors of deceased passengers in an air crash, the assignee of the aircraft owner, and a burn victim—claimed that they had standing to sue as third party beneficiaries of contracts between DeKalb County and the Federal Aviation Administration. Their complaint alleged that DeKalb County had entered into six grant agreements with the FAA under the terms of which DeKalb County agreed to "take action to restrict the use of land adjacent to or in the immediate vicinity of the Airport to activities and purposes compatible with normal airport operations including landing and takeoff of aircraft." *Id.* at 27, 97 S.Ct. at 2492. The Court held that federal law did not govern the petitioners' claim. The Court wrote,

"The litigation before us raises no question regarding the liability of the United States or the responsibilities of the United States under the contracts. The relevant inquiry is a narrow one: whether petitioners as third-party beneficiaries of the contracts have standing to sue respondent. While federal common law may govern even in diversity cases where a uniform national rule is necessary to further the interests of the Federal Government, *Clearfield Trust Co. v. United States*, 318 U.S. 363 [63 S.Ct. 573, 87 L.Ed. 838] (1943), the application of federal common law to resolve the issue presented here would promote no federal interests even approaching the magnitude of those found in *Clearfield Trust:*

'The issuance of commercial paper by the United States is on a vast scale and transactions in that paper from issuance to payment will commonly occur in several states. The application of state law, even without the conflict of laws rules of the forum, would subject the rights and duties of the United States to exceptional uncertainty. It would lead to great diversity in results by making identical transactions subject to the vagaries of the laws of the several states. The desirability of a uniform rule is plain.' *Id.* at 367 [63 S.Ct. at 575].

But, in this case, the resolution of petitioners' breach-of-contract claim against the respondent will have no direct effect upon the United States or its Treasury.

The Solicitor General, waiving his right to respond in these cases, advised us:

'In the course of the proceedings below, the United States determined that its interests would not be directly affected by the resolution of these issue[s] and therefore did not participate in briefing or argument in the court of appeals. In view of these considerations, the United States does not intend to respond to the petitions unless it is requested to do so by the Court.'

The operations of the United States in connection with FAA grants such as these are undoubtedly of considerable magnitude. However, we see no reason for concluding that these operations would be burdened or subjected to uncertainty by variant state-law interpretations regarding whether those with whom the United States contracts might be sued by third-party beneficiaries to the contracts. Since only the rights of private litigants are at issue here, we find the *Clearfield Trust* rationale inapplicable."

*Id.* at 28–30, 97 S.Ct. at 2493–94 (footnotes omitted). *See also Bank of America Nat. Trust & Sav. Ass'n v. Parnell*, 352 U.S. 29, 33–34, 77 S.Ct. 119, 121, 1 L.Ed.2d 93 (1956). Similarly, in the case at bar the federal government is responsible for contracting for or approving health benefits plans, 5 U.S.C. § 8903, but the FEP would not be significantly hindered by different state law interpretations of the medical necessity provision in the Blue Cross plan nor would disputes regarding those provisions involve anyone but private litigants.

*United States v. Carson,* 372 F.2d 429 (6th Cir.1967), upon which Blue Cross relies, is also distinguishable. *Carson* held that federal law governed an action in which the government brought suit for conversion against a person who had obtained a federal loan and had sold property in which the United States had a security interest. The court stated,

"*Clearfield* and the cases cited therein emphasize that the federal courts should determine the governing rule or law 'according to their own standards' in areas where constitutionally valid federal legislative programs have been commenced. Where a decision is likely to have a substantial effect on the implementation of a federal program, then a federal court should declare a rule consistent with the program's demands."

*Id.* at 432. Unlike *Carson*, a suit brought under an FEP policy for denial of a claim based on lack of medical necessity is not against the United States and does not seek funds from the United States Treasury. Further, the dispute in *Carson* arose out of the Bankhead-Jones Farm Tenant Act, which established an extensive federal lending program to promote the efficient and productive use of agricultural resources. The act requires that the government loans be adequately secured. 7 U.S.C. § 1946. Also a uniform federal rule governing the liability of livestock brokers dealing tortiously with mortgaged property helps prevent the unjustifiable defeat of United States security interests. 372 F.2d at 433. The same concerns are not involved in the case at bar.

As we understand *Clearfield, Miree,* and *Parnell,* when the federal government has an articulable interest in the outcome of a dispute, federal law governs. Thus, if diverse resolutions of a controversy would frustrate the operations of a federal program, *see Carson,* 372 F.2d at 432, conflict with a specific national policy, *see Bartsch v. Metro-Goldwyn-Mayer, Inc.,* 391 F.2d 150, 153 (2d Cir.), *cert. denied,* 393 U.S. 826, 89 S.Ct. 86, 21 L.Ed.2d 96 (1968),[1] or have some direct effect on the United

---

**1.** 5 U.S.C. § 8902(m)(1) provides:

"The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans to the extent that such law or regulation is inconsistent with such contractual provisions."

There is no indication that any law of Oklahoma conflicts with the medical necessity or any other provision of the Blue Cross contract.

States or its treasury, then federal law applies.

"In deciding whether rules of federal common law should be fashioned, normally the guiding principle is that a *significant conflict between some federal policy or interest and the use of state law in the premises must first be specifically shown.* It is by no means enough that, as we may assume, Congress could under the Constitution readily enact a complete code of law governing transactions in federal mineral leases among private parties. Whether latent federal power should be exercised to displace state law is primarily a decision for Congress."

*Miree,* 433 U.S. at 31–32, 97 S.Ct. at 2495 (quoting *Wallis v. Pan American Petroleum Corp.,* 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966)). We fail to see how various state court adjudications of FEP benefits claims will frustrate the operation of that program or conflict with a specific national policy.

■ Blue Cross argues that because the OPM has a procedure to review denials of benefits to plan participants, *see* 5 C.F.R. § 890.105, permitting state courts to apply state law in the type of situation before us substantially conflicts with the federal regulatory scheme. We do not agree. There is no adversarial process set up within the OPM to litigate these claims. Under 5 C.F.R. § 890.105(b), the carrier initially determines whether a claim is covered under the policy, and if a claim is denied, 5 C.F.R. § 890.106(c) permits a claimant to "make a written request to OPM's Associate Director for Compensation for a review to determine whether the plan's denial is in accord with the terms of OPM's contract with the carrier of the plan," and 5 U.S.C. § 8902(j) permits the OPM to require the carrier to pay. This review procedure apparently is designed to permit OPM to resolve major conflicts between itself and the carrier over interpretation of the plan. The regulations specifically declare that "OPM does not adjudicate individual claims for payment or service under health benefit plans." 5 C.F.R. § 890.105(a). Under a section titled "Legal Actions" the imple-

menting regulations for the FEP program state, "An action to recover on a claim for health benefits should be brought against the carrier of the health benefits plan." 5 C.F.R. § 890.107. This contemplates that claims for recovery under the plans should not involve the federal government, but should be individual actions against the health benefit carrier. In *Director, Edward J. Meyer Memorial Hospital v. Stetz,* 433 F.Supp. 323 (W.D.N.Y.1977), the Civil Service Commission (now OPM) expressed its desire not to be involved in the adjudication of claims for individual benefits. The court held,

"Therefore under the regulations promulgated by the Commission, actions such as this suit are specifically authorized only against the carrier.

. . . .

Under 5 U.S.C. § 8912, the federal district court has original jurisdiction over any claim against the United States based upon the Federal Employees Benefits Law. However, as stated above, the United States here acts as the agent, not the insurer of health benefits."

*Id.* at 325–26. The court then dismissed the action because there was no federal question jurisdiction and the $10,000 requirement for diversity action jurisdiction was not present.

State court awards of monetary judgments in FEP benefits actions do not have a sufficiently direct effect on the federal treasury to necessitate federal jurisdiction. The legislative history of the FEP program suggests that because of the competition among insurers eligible for the plan, Congress did not anticipate that judgments against insurance carriers and consequential increases in costs to the plans would substantially burden the government. The legislative history states,

"All employees have a choice of at least seven plans; some, depending on where they are located, as many as ten. This free choice feature of the program stimulates the keenest kind of competition among the plans to provide the best benefits for the least amount of premi-

ums.... Equally important, it gives the employee an opportunity to select the level of benefits and premium expenditure he considers best suited to his own particular needs."

H.R.Rep. No. 91–1084, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Ad. News 3875–76.

Finally, Blue Cross argues, citing *Wissner v. Wissner*, 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950); *Metropolitan Life Insurance Co. v. Thompson*, 368 F.2d 791 (2d Cir.1966), *cert. denied*, 388 U.S. 914, 87 S.Ct. 2127, 18 L.Ed.2d 1355 (1967); and *Pennsylvania National Association of Flood Insurers*, 378 F.Supp. 1339, 1345 (M.D.Pa.1974), *modified*, 520 F.2d 11 (3d Cir.1975), that because courts have held that other federal insurance programs are governed by federal law, we should hold that the FEP program is governed by federal law. We disagree. *Wissner* involved the National Service Life Insurance Act, which provides a uniform and comprehensive system of life insurance for members and veterans of the United States armed forces. Premiums are low and waived during the insured's disability, costs of administration are borne by the United States, and liabilities may be discharged from congressional appropriations. 338 U.S. at 658. Further, the dispute in *Wissner* concerning the right to designate beneficiaries involved the interpretation of a specific provision incorporated in a federal statute. *See* 8 U.S.C. § 802(g). In contrast, the Blue Cross program in Oklahoma is merely one of a number of federal employee medical insurance programs authorized by Congress. The "medical necessity" limitation on payment of benefits is not part of any congressional enactment, but is one of the provisions incorporated in the Oklahoma contract.

*Metropolitan Life* involved the interpretation of the word "children" in 5 U.S.C. § 2093, a section specifically incorporated in the Federal Employees Group Life Insurance Act. In *Flood Insurers* jurisdiction was specifically granted to the federal courts under 42 U.S.C. § 4053.

A case Blue Cross does not cite, *Railsback v. United States*, 181 F.Supp. 765 (D.Neb.1960), held that a claim brought under a federal group life insurance policy negotiated by the Civil Service Commission does not confer jurisdiction on the federal courts. The court wrote,

"In negotiating for and procuring a policy of group life insurance for its employees, the United States government acts as an agent and not as the insurer. There is no policy of insurance between the government and the employee. It is clear from a reading of the Act that an employee is insured under a policy purchased by the Civil Service Commission, and not under any contract with or obligation of the United States. The decedent here was insured under a policy with Metropolitan.

. . . . .

Under the facts in this case and the Act in question, this Court concludes that the plaintiff has no claim against the United States upon which relief can be granted, and that the United States has not consented to a suit against itself for the claim here made.

The plaintiff here is not without remedy. She may yet proceed in the State Courts in order that her claim might be litigated. There is, however, no jurisdiction in this or any other federal court upon her claim."

*Id.* at 766–67. We agree with the reasoning in *Railsback* and believe that the situation in the case at bar is analogous. The Oklahoma Blue Cross contract at issue here is a federal contract authorized by federal law and negotiated by OPM, but the rights created under the contract belong to the participants. Essentially, denial of an individual claim because the carrier claimed that the treatment was not a "medical necessity" is a private controversy in which the federal government simply does not have an interest sufficient to justify invoking federal question jurisdiction.

VACATED AND REMANDED.

WILLIAM E. DOYLE, Circuit Judge, concurring.

I concur in the conclusion that was reached by Judge Logan in the majority opinion.

The majority opinion correctly concludes that no federal question jurisdiction is present in this case. However, the conclusion is reached after a lengthy and unnecessary discussion of whether federal law should apply to the interpretation of the insurance policy. Even if it were true that federal law should control the interpretation of the contract, that fact alone would be insufficient to establish a federal question giving rise to federal jurisdiction over the case. Ordinarily, state and federal courts have concurrent jurisdiction over matters of federal law. *Hathorn v. Lovorn*, 457 U.S. 255, 102 S.Ct. 2421, 2428, 72 L.Ed.2d 824 (1982). The fact, then, that federal law may be involved in a state court action does not automatically support the exercise of removal jurisdiction.

It must be remembered that a defendant may only remove a state action to a federal court if the federal court would have had original jurisdiction over that action in the first instance. 28 U.S.C. § 1441. Blue Cross asserts that this court may exercise federal question removal jurisdiction. Its contention, however, must be rejected.

The case at bar is an action to enforce a contract. Thus the action is one that arises under state, rather than federal, law. Blue Cross in essence seeks to raise a federal preemption defense by claiming that federal law rather than state law controls the interpretation of the underlying contract. The alleged federal question does not appear on the face of the plaintiff's well-pleaded complaint. Therefore, we have no jurisdiction to adjudicate this state law cause of action on the basis of the alleged federal defense.

> The well-pleaded complaint rule was framed to deal with precisely such a situation .... [S]ince 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.

*Franchise Tax Bd. v. Const. Laborers Vac. Trust*, 463 U.S. 1, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983); *See also Gully v. First Nat'l. Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Tennessee v. Union & Planters' Bank*, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511 (1894).

In *Gully*, Justice Cardozo eloquently cautioned against broad definition of federal question jurisdiction, such as that urged by Blue Cross in this case.

> If we follow the ascent far enough, countless claims of right can be discovered to have their source or their operative limits in the provisions of a federal statute or in the Constitution itself with its circumambient restrictions upon legislative power. To set bounds to the pursuit, the courts have formulated the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible. We shall be lost in a maze if we put that compass by.

*See generally*, C. Wright, The Law of Federal Courts 94–102. Because the arguable federal question appears in this case by way of a defense to simple state law contract claims, there is no basis for the exercise of federal question removal jurisdiction.