[No. E003956. Fourth Dist., Div. Two. Nov. 16, 1987.]

STEVE HARTENSTINE, Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
BLUE CROSS OF SOUTHERN CALIFORNIA et al., Real Parties
in Interest.

**COUNSEL**

Michael V. McIntire for Petitioner.

No appearance for Respondent.

Munger, Tolles & Olson, Charles D. Siegal, Hassard, Bonnington, Rodgers & Huber and Dellert C. Gee for Real Parties in Interest.

Richard K. Willard, Assistant Attorney General, William G. Kanter, Dwight G. Rabuse and Stephen Page Smith as Amici Curiae.

OPINION

McDANIEL, J.—Huntington Intercommunity Hospital (Hospital) sued Stephen Hartenstine (Hartenstine), a federal employee, for $7,709.35 in unpaid hospital expenses. Hartenstine filed a cross-complaint against his insurance carriers, alleging counts in contract and in tort. The trial court granted the carriers' motion for summary adjudication of the tort counts, on the ground that those counts were preempted by the Federal Employee Health Benefits Act (5 U.S.C. § 8901 et seq., hereafter referred to as FEHBA). Hartenstine petitioned this court for a writ of mandate which would direct the trial court to vacate its order granting the motion for summary adjudication, and to enter an order denying the motion. We authorized issuance of an alternative writ, the matter is now before us for disposition and we shall deny the petition.

### FACTS AND PROCEEDINGS

On August 18, 1980, Hartenstine's minor daughter Pamela was admitted to Hospital for psychiatric treatment. She was released from Hospital over four months later on December 23, 1980. At the time of her admission, she was covered as a family member under a FEHBA Service Benefit Plan in which her father was enrolled (the Plan). The Plan was administered by Blue Cross of California and Blue Shield of California pursuant to an FEHBA-authorized contract between them and the Office of Personnel Management (OPM). The Plan recited that benefits would not be provided for hospital admissions or portions thereof which, in the judgment of the carriers, had not been medically necessary. The Plan also recited that a denial of a claim would be reconsidered by the local Blue Cross and Blue Shield upon receipt of a written request within one year of the denial, and, within ninety days after an affirmation of the denial, that the claimant could ask OPM to determine if the denial had complied with the provisions of the Plan's brochure.

In the case here, Blue Cross paid for Pamela's hospitalization from August 18, 1980, through November 14, 1980, and refused to pay for her hospitalization from November 15, 1980, through December 23, 1980, a total of $7,709.35, on the ground that its review of her records had indicated that the hospitalization after November 14 had not been medically necessary.

Hospital filed suit against Hartenstine for payment of the $7,709.35, plus interest and attorney's fees. Without, it appears, going through the Plan's review procedures, *ante,* Hartenstine filed a cross-complaint against Blue Cross and Blue Shield (the carriers) for breach of contract, breach of the

covenant of good faith and fair dealing, and violation of Insurance Code section 790.03, subdivision (h) (unfair claims settlement practices). Under these theories, Hartenstine sought both compensatory and punitive (exemplary) damages.

In his first cause of action for breach of contract, Hartenstine alleged that he was a federal employee and, as such, a beneficiary of the Plan; that the Plan provided for payment of all of Pamela's hospital expenses, and that the carriers' refusal to pay her hospital expenses from November 15 through December 23, 1980, constituted a breach of contract. Hartenstine did not attach a copy of the Plan, or any other contract, to his second amended cross-complaint (the pleading as to which the summary judgment was granted).[1]

In his second and third causes of action for breach of the covenant of good-faith and fair dealing and violation of Insurance Code section 790.03, subdivision (h), respectively, Hartenstine alleged that the carriers had breached the foregoing covenant and violated the provisions of section 790.03, subdivision (h) by: (a) denying policy benefits to Hartenstine with the knowledge that the denial was contrary to established law and the terms of the policy; (b) refusing to make an adequate or good-faith investigation of Hartenstine's claim before withholding the benefits; (c) terminating payments during Pamela's hospitalization without notice or warning to Hartenstine; (d) failing to provide Hartenstine with any reasonable or justifiable basis for the denial of his claim, or with the factual or legal basis for the denial, and (e) consciously applying the policy provisions so as to save money for the carriers and deprive Hartenstine of the benefits rightfully due him.

The carriers each filed an answer to Hartenstine's second amended cross-complaint. Each of the answers alleged many affirmative defenses, but neither answer alleged, as an affirmative defense, that any of the causes of action in Hartenstine's cross-complaint were preempted by federal law.

About two years later, Blue Cross noticed a motion for summary adjudication of issues without substantial controversy. In its motion Blue Cross argued, among other things, that Hartenstine's second cause of action (for breach of the covenant of good faith and fair dealing), his third cause of action (for violation of Ins. Code, § 790.03, subd. (h)), and his requests for damages · for emotional distress and for exemplary damages were all

---

[1] The only cross-complaint cited to in Hartenstine's writ petition is the *first* amended cross-complaint. We have augmented the record to include the second amended cross-complaint, and shall base our analysis on that pleading.

preempted by federal law, and that hence Blue Cross was entitled to summary adjudication thereof.

In support of its motion for summary adjudication, Blue Cross attached the declaration of Nora Drain, a consultant in its federal employee program. A copy of the Plan's 1980 brochure (i.e., the brochure which would have applied to Pamela's hospitalization, hereafter the Brochure) was attached to the declaration. The declaration recited that it was based upon Drain's personal knowledge and that she could competently testify that: ". . . [¶] 2. At all relevant times Hartenstine was a member of the Plan.

"3. Each year, pursuant to [FEHBA, OPM] publishes, prints and distributes to all federal employees brochures regarding each Federal Employee Health Plan. The brochures are statements of benefits, exclusions and limitations for each Plan.

"4. The [Plan's brochure] is sent to all federal employees. . . . The provisions of the [Plan] are specifically negotiated each year between Blue Cross and Blue Shield Association and OPM. The OPM must give its approval pursuant to [FEHBA]. Upon approval of the Plan, OPM orders publication of the brochures. . . . OPM then distributes the brochures to the Plan's subscribers. The Brochure is part of the contract between OPM and Blue Cross and Blue Shield Association."

Blue Cross's motion, in compliance with the applicable statute, also included a statement of undisputed material facts. Facts number 4, 5 and 6 reiterated paragraphs 3 and 4 of the Drain declaration, *ante,* and cited the declaration as the evidentiary source therefor. Fact number 14 recited that Hartenstine had asserted that Blue Cross's retrospective review of his claims for Pamela's hospitalization was per se bad faith, and cited, as the evidentiary source therefor, Hartenstine's notice of motion to vacate an order submitting the case to arbitration. In that motion, Hartenstine had argued that the case should be continued until the California Supreme Court decided *Sarchett* v. *Blue Shield* (Cal.App.)* because, as Hartenstine argued, *Sarchett* was "almost identical on its facts" with this case, and the California Supreme Court had granted a hearing in *Sarchett* on the issue of whether an insurer's retrospective denial of benefits was bad faith as a matter of law.

Blue Shield joined in Blue Cross's motion.

Plaintiff filed an opposition to the motion, contending that it should not be granted because: (1) the carriers had waived the defense of preemption

---

* Reporter's note: For Supreme Court opinion, see 43 Cal.3d 1 [233 Cal.Rptr. 76, 729 P.2d 267].

because they had not pleaded it as an affirmative defense; (2) the State of California was an indispensable party to an adjudication of the preemption issue; (3) the Plan's brochure could not be admitted into evidence on the basis of Nora Drain's declaration, and therefore there was no competent evidence upon which to grant the motion; (4) California statutory and common law regulating the insurance industry were not preempted by FEHBA, and (5) additional evidence essential to Hartenstine's opposition to the motion existed but was not yet available to him.

In further support of his opposition to the motion, Hartenstine filed a separate statement of disputed facts, and a declaration of his attorney. In his statement of disputed facts, Hartenstine disputed Blue Cross's statements, *ante,* as to OPM's brochures in general, and the Plan's brochure in particular, on the grounds that there was no admissible evidence to support such "factual" allegations. In his declaration, Hartenstine's attorney stated that he was unable to prepare effective opposition to the motion without examining, among other things: all of the contracts between the federal government and Blue Cross "over the years," including the contract applicable to plaintiff's claims; all documentation relative to the negotiations for such contracts; the procedures used by Blue Cross in adjusting claims for federal employees and nonfederal employees, and the federal rules and regulations relating to federal employee plans.

After a hearing, an order was entered granting the carriers' motion for summary adjudication which recited in relevant part: "5. The Blue Cross and Blue Shield Federal Employee Service Benefit Plan brochure . . . is sent to all federal employees. The . . . brochure applicable to calendar year 1980 is attached as Exhibit 'A' to the declaration of Nora Drain.

"6. The provisions of the federal employee plan of Blue Cross & Blue Shield are specifically negotiated between Blue Cross and Blue Shield and OPM . . . Upon approval of the plan, OPM orders publication of the brochures. . . . OPM then distributes the brochures to the plan's subscribers. *The [Blue Cross and Blue Shield] brochure is part of the contract between OPM and Blue Cross. . . .*

"14. In addition to the specific allegations of this complaint, Hartenstine has asserted that Blue Cross's retrospective review of claims for Pamela Hartenstine's hospitalization are per se badfaith [*sic*].

"15. The court finds that the provisions of 5 USC § 8902(m)(1)[2] apply to and preempt cross-complainant's second and third causes of action in their entirety. Specifically, the court finds that the retrospective review complain[ed] of is a matter relating to the 'nature and extent of coverage or benefits, including payments with respect to benefits' contemplated by the statute. Further, the court finds that the federal employees health benefits act so comprehensively provides for the nature and extent of coverage and for payment dispute resolution that application of the alleged state causes of action is inconsistent with the provisions of the act.

"16. The court finds that the emotional distress tort relief in the first cause of action of Hartenstine's cross-complaint is, likewise, not provided for by the federal employees health benefits act and is preempted.

"17. The court finds that punitive damages are neither provided for nor allowed under the federal employees health benefits act and are thus preempted." (Italics added.)

This petition followed.

### DISCUSSION

Hartenstine contends: (1) summary adjudication cannot be granted on a defense of preemption which was not raised as an affirmative defense; (2) there was no competent evidence to support the summary adjudication; (3) the carriers are collaterally estopped from asserting the defense of preemption; (4) California laws regulating insurance claims practices are not preempted by the FEHBA; (5) the trial court erred in granting the carriers' motion without giving Hartenstine an opportunity to obtain evidence in opposition, and (6) the State of California is a necessary party to a suit challenging the validity of Insurance Code section 790.03, subdivision (h).

### I

### DEFENDANTS' FAILURE TO RAISE PREEMPTION AS AN AFFIRMATIVE DEFENSE

Hartenstine contends that preemption is an affirmative defense which is waived if it is not pleaded in the answer. Not so. As the California

---

[2] 5 United States Code section 8902 (m)(1) recites: "The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans to the extent that such law or regulation is inconsistent with such contractual provisions."

Supreme Court stated recently in *DeTomaso* v. *Pan American World Airways, Inc.* (1987) 43 Cal.3d 517 [235 Cal.Rptr. 292, 733 P.2d 614]: "The RLA [Railway Labor Act] preemption issue was first raised in Pan Am's trial brief. DeTomaso claims [because] the issue was not specifically pleaded as an affirmative defense, [that] it was waived. Whether or not tort claims are preempted by RLA is a question of subject matter jurisdiction (*Beers* v. *Southern Pacific Transp. Co.* (9th Cir. 1983) 703 F.2d 425, 429) which cannot be waived. (*Summers* v. *Superior Court* (1959) 53 Cal.2d 295, 298 [1 Cal.Rptr. 324, 347 P.2d 668].)" (*Id.,* at p. 520, fn. 1.)

## II

### The Evidence in Support of the Motion

■ On this point, Hartenstine contends first that the statements in Drain's declaration, *ante*, page 211, about the Plan were inadmissible to prove the facts therein, because there was no showing that Drain had personal knowledge of such facts, or that she was competent to offer legal opinions thereon. However, whether or not Drain was competent to testify to her statements about the Plan is irrelevant, because the substance of the statements is included in the FEHBA,[3] and in the Brochure which was attached to Drain's declaration.[4]

---

[3] 5 United States Code section 8902 recites, in relevant part: "(a) The Office of Personnel Management may contract with qualified carriers offering plans . . . . Each contract shall be for a uniform term of at least 1 year . . . . [¶] (d) Each contract under this chapter shall contain a detailed statement of benefits offered and shall include such maximums, limitations, exclusions, and other definitions of benefits as the Office considers necessary or desirable . . . . [¶] (e) . . . Approval of a plan may be withdrawn only after notice and opportunity for hearing to the carrier concerned."

5 United States Code section 8907 recites: "(a) The Office of Personnel Management shall make available to each individual eligible to enroll in a health benefits plan under this chapter such information, in a form acceptable to the Office after consultation with the carrier, as may be necessary to enable the individual to exercise an informed choice among the types of plans described by sections 8903 and 8903a of this title.

"(b) Each enrollee in a health benefits plan shall be issued an appropriate document setting forth or summarizing the—

"(1) services or benefits, including maximums, limitations, and exclusions, to which the enrollee or the enrollee and any eligible family members are entitled thereunder;

"(2) procedure for obtaining benefits; and

"(3) principal provisions of the plan affecting the enrollee and any eligible family members."

[4] The Brochure is entitled: "SERVICE BENEFIT PLAN 1980 As Revised January 1, 1980," and recites, on page 2 thereof: "Blue Cross Association on behalf of Blue Cross Plans, and Blue Shield Association on behalf of Blue Shield Plans, have entered into Contract No. CS 1039 with the Office of Personnel Management pursuant to which Blue Cross Plans and Blue Shield Plans agree to provide the Government-wide Service Benefit Plan authorized by the Federal Employees Health Benefits Law.

In his traverse, without referring specifically to the Brochure, Hartenstine argues that the contract which was in effect when Blue Cross denied his benefits was never introduced into evidence or seen by the trial court, and was "pivotal to Blue Cross's defense of preemption." However, the Brochure, which, according to the recitations in footnote 4, *ante,* was the contract in effect when Hartenstine was purportedly entitled to his benefits (although not necessarily when Blue Cross denied the benefits), *was* introduced into evidence by way of Drain's declaration, and was specifically referred to by the trial court in its order granting the summary adjudication. Moreover, if, as Hartenstine argues, the contract was "pivotal" to Blue Cross's defense, then it was even more pivotal to Hartenstine's cross-complaint, and we cannot perceive why Hartenstine did not attach it to the complaint, or, having failed to do so, how he can credibly object to the carriers' attempt to introduce it into evidence by way of Drain's declaration.

At oral argument, Hartenstine argued that there was no reference in the Brochure to any statutory contract between the federal government and Blue Cross and Blue Shield. Not so. As noted: (1) the Brochure recites that it is part of Contract No. CS 1039 between OPM and Blue Cross Association and Blue Shield Association (see fn. 4, *ante*); (2) paragraph 6 of the trial court's order granting summary adjudication for the carriers recites that the Brochure "is part of the contract between OPM and Blue Cross"; and (3) the contract alleged in paragraph 4 of Hartenstine's cross-complaint is the federal employee "Service Benefit Plan pursuant to which cross-defendants [Blue Cross and Blue Shield] were to provide medical and hospitalization benefits to [Hartenstine and Hartenstine's] dependents," and the Brochure is entitled "SERVICE BENEFIT PLAN . . . Administered by The Blue Cross [trademark omitted] and Blue Shield [trademark omitted] Federal Employee Program." In view of all the above, the statement of Hartenstine's attorney at oral argument that "the trial judge here interpreted a contract without ever seeing it" is not supported by the record.

Hartenstine also contends that the carriers falsely stated, as their undisputed fact number 14, *ante,* that Hartenstine had asserted that Blue Cross's retrospective review of his claim was per se bad faith, and that the trial court "thereupon [i.e., on the basis of that statement] had concluded that state law was pre-empted." We need not address this issue, however, because, as we shall discuss more fully below, Hartenstine's second and third counts would have been preempted whether or not he had alleged or otherwise asserted that the carriers' retrospective review (i.e., the *manner* in which they had denied his benefits) was bad faith per se or bad faith under

*"This brochure is incorporated into Contract No. CS 1039 as the contract statement of benefits, exclusions, limitations and maximums . . . ."* (Italics added.)

the circumstances of his case. In other words, what was preempted was Hartenstine's *general* claim that he was entitled to damages because the denial of his benefits had been in bad faith and unfair, and not any *specific* theory as to why the denial had been in bad faith or unfair.

Hartenstine also contends that none of the facts alleged in his cross-complaint were relevant to the preemption issue. Not so. In the cross-complaint Hartenstine alleged that: (1) at all times mentioned he was a *federal* employee; (2) as a *federal* employee he was a beneficiary of the carriers' *federal* benefit plan pursuant to *Federal* Employees Group Certificate No. R11-45-8457; (3) the carriers refused to pay him some of the benefits to which they knew he as entitled under the *federal* plan; (4) such refusal constituted bad faith under *California* law, and a violation of *California* Insurance Code section 790.03, subdivision (h). Allegations 1, 2 and 3, which were also recited in the carriers' statement of undisputed facts, not only were relevant to the preemption issue, but also were sufficient to determine its application in the case here.

In view of all the above, Hartenstine's contention that there was no competent evidence to support the summary judgment is without merit.

## III

### COLLATERAL ESTOPPEL

Hartenstine contends that the carriers are estopped from raising the preemption issue because Blue Shield had raised and lost the same issue in *Fields* v. *Blue Shield of California* (1985) 163 Cal.App.3d 570 [209 Cal.Rptr. 781]. Not so. The only preemption issue which was decided in *Fields* was whether Fields's contract claim for compensatory damages for benefits under the policy was preempted. In the case here, however, the carriers do not contend that Hartenstine's claim for such benefits, in his first cause of action, is preempted. Moreover, although in *Fields* the plaintiff had also sought exemplary damages for breach of the insurer's duty of good faith and fair dealing, the jury had returned a verdict against him on that count, and the verdict had been affirmed on appeal. Accordingly, the appellate court had not addressed the issue of whether Fields's bad faith claim was preempted.

In sum, the preemption issue which was decided in *Fields* was not raised here, and the preemption issue which was raised here was not decided in *Fields*. Accordingly, Hartenstine's collateral estoppel contention is without merit, if not specious.

IV

PREEMPTION

■ "[T]he question whether a certain state action is pre-empted by federal law is one of congressional intent." (*Allis-Chalmers Corp.* v. *Lueck* (1985) 471 U.S. 202, 208 [85 L.Ed.2d 206, 213, 105 S.Ct. 1904, 1910].) In the case here, as noted, FEHBA contains an express preemption clause, which recites: "The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans to the extent that such law or regulation is inconsistent with such contractual provisions." (5 U.S.C. § 8902(m)(1).) "The policy underlying section 8902(m)(1) is to ensure uniformity in the administration of FEHBA benefits. *See* H.R. Rep. No. 282, 95th Cong., 1st Sess. 1, 4 (1977)." (*Hayes* v. *Prudential Ins. Co. of America* (9th Cir. 1987) 819 . F.2d 921, 925.)

The preemptive effect of section 8902(m)(1) has been analyzed in several recent circuit court cases. In *Blue Cross & Blue Shield* v. *Dept. of Banking* (11th Cir. 1986) 791 F.2d 1501, the court held that Florida's Unclaimed Property Act was preempted pursuant to section 8902(m)(1) because it "'relate[d] to'" a FEHBA plan, by having "'a connection with or reference to such a plan.'" (*Id.,* at p. 1504.) In *Myers* v. *United States* (4th Cir. 1985) 767 F.2d 1072, the court held that South Carolina's law allowing a plaintiff to recover attorney's fees in a successful bad faith suit against an insurer was preempted pursuant to section 8902(m)(1) because it "purport[ed] to allow recovery of additional benefits not contemplated by [the] federal insurance contract [and thus] must be deemed inconsistent [with it]." (*Id.,* at p. 1074.)

Of particular significance to the case here is the Ninth Circuit's recent decision in *Hayes* v. *Prudential Ins. Co. of America, supra,* 819 F.2d 921, a suit for damages in contract and tort by a beneficiary of an FEHBA plan. Relying on *Blue Cross, Myers,* and two recent United States Supreme Court cases, the *Hayes* court held that the state law causes of action, including breach of a duty of good faith and fair dealing and breach of California Insurance Code section 790.03, were preempted by the FEHBA, and that the district court had properly granted summary judgment in favor of the carriers. The court's reasoning, which is precisely applicable to the case here, recites: "Appellant contends that his state law claims [fn. omitted] are not preempted under section 8902(m)(1), because the claims relate to the manner in which Postmasters and Prudential *processed* his benefits, and not to the 'nature or extent of coverage or benefits.' No such distinction can be

made. *Tort claims arising out of the manner in which a benefit claim is handled are not separable from the terms of the contract. See Allis-Chalmers Corp.* v. *Lueck,* 471 U.S. 202, 213-20, 105 S.Ct. 1904, 1912-16, 85 L.Ed.2d 206 (1985) (state tort claim stemming from manner in which a Labor Management Relations Act insurance benefit claim was handled is not independent of insurance contract and therefore is preempted by federal law). Moreover, the claims 'relate to' the plan under section 8902(m)(1) as long as they have a connection with or refer to the plan. *Blue Cross,* 791 F.2d at 1504. All appellants' state law claims refer to the plan, and therefore fall under the preemption clause.

"Because the state law claims invariably expand appellees' obligations under the terms of the Plan, the claims are inconsistent with the Plan and, hence, preempted under § 8902(m)(1). Our holding is supported by the Supreme Court's recent decision that the Employee Retirement Income Security Act (ERISA) preempts state common law tort and contract claims for benefits under an ERISA-regulated plan. *Pilot Life Ins. Co.* v. *Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). ERISA's preemption clause is similar to section 8902(m)(1) of the FEHBA. [Fn. omitted.] And the Court held that the state claims were preempted despite a saving clause, 29 U.S.C. § 1144(b)(2)(A), which has no counterpart in the FEHBA. Thus, we hold Hayes' state law claims are preempted by the FEHBA." (*Hayes, supra,* 819 F.2d at p. 936.) (Italics on "processed" in original; other italics added.)

Hartenstine relies on the earlier circuit court case of *Howard* v. *Group Hosp. Service* (10th Cir. 1984) 739 F.2d 1508, where the court held that a suit in an Oklahoma state court for damages in contract and tort resulting from Blue Cross's failure to pay claims under an FEHBA plan should not have been removed to the United States District Court on the basis of federal question jurisdiction (28 U.S.C. § 1441(b)). However, the analysis in *Howard* was limited to the contract claim; there was no reference to preemption in the majority opinion, and, as the concurring opinion stated, the existence of a federal preemption defense would be insufficient to invoke the exercise of removal jurisdiction.[5] Accordingly, the holding in *Howard* is irrelevant to the preemption issue in the case here.

---

[5] On the preemption issue, the concurring opinion recited, in relevant part: "The case at bar is an action to enforce a contract. Thus the action is one that arises under state, rather than federal, law. Blue Cross in essence seeks to raise a federal preemption defense by claiming that federal law rather than state law controls the interpretation of the underlying contract. The alleged federal question does not appear on the face of the plaintiff's well-pleaded complaint. Therefore, we have no jurisdiction to adjudicate this state law cause of action on the basis of the alleged federal defense. [¶] 'The well-pleaded complaint rule was framed to deal with precisely such a situation. . . . [S]ince 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both

Moreover, the holding in *Howard* on the jurisdiction issue was not followed in *Hayes,* where the state court action was removed to the federal district court, *Myers,* where the action was brought and decided in the federal district court pursuant to 5 United States Code section 8912,[6] or *Blue Cross,* where the action was also brought and decided in the federal district court.[7]

Further, if we were to apply the reasoning in *Howard* on the jurisdiction issue to Hartenstine's tort claims in the case here, the result would be contrary to section 8902(m)(1)'s purpose, *ante,* of promoting uniformity in the administration of FEHBA's benefits. More specifically, the *Howard* court reasoned that "[t]he Oklahoma Blue Cross contract at issue here is a federal contract authorized by federal law and negotiated by OPM, but the rights created under the contract belong to the participants. Essentially, denial of an individual claim because the carrier claimed that a treatment was not a 'medical necessity' is a private controversy in which the federal government simply does not have an interest sufficient to justify invoking federal question jurisdiction." (*Howard* v. *Group Hosp. Service, supra,* 739 F.2d 1508.) Such reasoning not only is contrary to the uniformity purpose of section 8902(m)(1), *ante,* but also disregards the jurisdictional provisions of section 8912 (see fn. 6, *ante*). We therefore decline to apply the reasoning to the case here.

Hartenstine also relies on portions of the McCarran-Ferguson Act (15 U.S.C. § 1011 et seq.) for the proposition that Congress has given the states the power to regulate all matters concerning the relationship between the insurer and the insured, including policy interpretation and enforcement. Not so. Hartenstine relies on the following portions of sections 1011 and 1012: "Congress declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, . . ." (§ 1011.) "The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." (§ 1012, subd. (a).)

However, the foregoing portion of section 1011 is followed by the words "and that *silence on the part of the Congress* shall not be construed to

---

parties admit that the defense is the only question truly at issue in the case.' [Citations.]" (*Howard, supra,* at p. 1513.)

[6] Section 8912 recites: "The district courts of the United States have original jurisdiction, concurrent with the United States Claims Court, of a civil action or claim against the United States founded on this chapter."

[7] In view of the above, Hartenstine's statement on page 11 of his traverse that "the doors of the federal courts are closed to an insured federal employee seeking to recover benefits under an insurance plan established under the authority of the Health Benefits Act" is not an accurate statement of existing law.

impose any barrier to the regulation or taxation of such business by the several States" (italics added), and subdivision (a) of section 1012, is followed by subdivision (b) of that section, which recites, in relevant part: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, *unless such Act specifically relates to the business of insurance . . . .*" (Italics added.)

In sum, the foregoing portions of the McCarran-Ferguson Act which Hartenstine did not cite, show that his contention that that act empowers the states to regulate the insurance industry is without merit.

Hartenstine also relies on the following language in *Metropolitan Life Ins. Co.* v. *Massachusetts* (1985) 471 U.S. 724 [85 L.Ed.2d 728, 105 S.Ct. 2380]: "laws that regulate only the insurer, or the way in which it may sell insurance, do not 'relate to' benefit plans in the first instance [and therefore] would not be pre-empted by § 514(a) [the ERISA preemption statute]." (*Id.,* at p. 741 [85 L.Ed.2d at p. 741, 105 S.Ct. at p. 2390] .) However, in the next sentence, the court described such laws as laws "wholly unrelated to plans." (*Id.,* at p. 742 [85 L.Ed.2d at p. 742].) In other words, not all state laws regulating an insurer are unrelated to benefit plans, as Hartenstine argues, but only those state laws which regulate "only" the insurer in areas which are unrelated to benefit plans. In the case here, of course, the state laws at issue in Hartenstine's tort claims regulate the insurer in areas which *are* related to benefit plans. Accordingly, Hartenstine's reliance on the foregoing language in *Metropolitan Life* is misplaced.

Otherwise, Hartenstine contends that California laws prohibiting unfair claims practices are not preempted because they do not conflict with any of the provisions of the Plan or the FEHBA. Not so. Nowhere does the Plan or the FEHBA authorize a plaintiff to recover tort or punitive damages for the carrier's refusal to pay a claim, and "a state law which purports to allow recovery of additional benefits not contemplated by a federal insurance contract must be deemed inconsistent." (*Myers* v. *United States, supra,* 767 F.2d 1072, 1074.)

Moreover, in its amicus brief OPM argues that Hartenstine's state law claims should be preempted pursuant to section 8902(m)(1) because they are inconsistent with the Plan, and because the imposition of varying state law requirements would undermine the purposes and objectives of the FEHBA. The interpretation of a statute by an agency which is charged with its administration should be shown "great deference" by the courts,

provided that the interpretation is a reasonable one. (*Udall* v. *Tallman* (1965) 380 U.S. 1, 16 [13 L.Ed.2d 616, 625, 85 S.Ct. 792, 801].)[8]

In view of all the above, we find that OPM's interpretation is reasonable, and that the trial court's ruling that Hartenstine's second and third causes of action were preempted was conclusively compelled by applicable authorities.

V

### EVIDENCE IN OPPOSITION

Code of Civil Procedure section 437c, subdivision (h) recites in relevant part: "If it appears from the affidavits submitted in opposition to a motion for . . . summary adjudication . . . that *facts essential to justify opposition* may exist but *cannot, for reasons stated, then be presented,* the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just." (Italics added.)

■  In the case here, Hartenstine contends that the trial court should have continued the matter to allow him to obtain: (1) the contract which applied to his complaint; (2) contracts "for prior years"; and (3) the carriers' documentation, or lack thereof, of conflicts between the rights of federal employee insureds and the rights of nonfederal employee insureds. We do not agree.

As to the contract, we repeat yet again that the contract *was* before the court, through the efforts of the carriers, and that we are at a loss to understand how Hartenstine can credibly argue that the court should continue the case to allow him to obtain a contract which he should have attached to his complaint over two years earlier.

As to the rest of the foregoing evidence, Hartenstine did not show, in his opposition papers, either that the evidence was "essential to justify opposition," or that he could not have obtained it in the period of over two years between the filing of his second amended complaint and the filing of Blue Cross's motion for summary adjudication. Accordingly, his contention the trial court should have continued the matter in order to allow him to obtain such evidence is without merit.

---

[8] In his traverse, Hartenstine argues that OPM's amicus brief is not entitled to any deference, because, among other things, it was "conceived in secrecy [and] circulated to virtually no one other than lawyers and judges."

# VI

## THE STATE OF CALIFORNIA AS A NECESSARY PARTY

Without citing any authority, Hartenstine contends that the State of California's interest in enforcing its laws requires that it be a party to this action, because Code of Civil Procedure section 389, subdivision (a) prohibits the determination of an issue in which a nonparty "has" an interest. Not so.

Section 389, subdivision (a) recites that a person "shall be joined as a party in the action if . . . (2) he *claims* an interest relating to the subject of the action . . . ." (Italics added.) No such claim has been made by California in the case here, nor may Hartenstine make such a claim on California's behalf. (Significantly, although Hartenstine now argues that California is a necessary party, he did not think it was necessary to name it as a party in his cross-complaint.) Moreover, " '[t]he relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail.' " (*Fidelity Federal Sav. & Loan Assn.* v. *De La Cuesta* (1982) 458 U.S. 141, 153 [73 L.Ed.2d 664, 675, 102 S.Ct. 3014, 3022].)

In view of the foregoing, Hartenstine's contention that California is a necessary party is likewise without merit.

## DISPOSITION

The petition is denied and the alternative writ is discharged. The order to show cause here was not improvidently granted; it was granted "because of the significant public importance of the issues involved." (*County of Madera* v. *Superior Court* (1974) 39 Cal.App.3d 665, 668 [114 Cal.Rptr. 283].) Real parties shall be entitled to their costs as provided by section 1027 of the Code of Civil Procedure.

Campbell, P. J., and Schulte, J.,* concurred.

Petitioner's application for review by the Supreme Court was denied February 18, 1988. Mosk, J., and Broussard, J., were of the opinion that the application should be granted.

* Assigned by the Chairperson of the Judicial Council.