United States Court of Appeals,

Fifth Circuit.

No. 91-3653.

Linda W. BURKEY and Carey David Burkey, Plaintiffs-Appellees, Cross-Appellants,

and

Department of Health & Human Resources, et al., Intervenors-Plaintiffs-Appellees,

v.

GOVERNMENT EMPLOYEES HOSPITAL ASSOCIATION, Defendant-Appellant, Cross-Appellee.

Feb. 17, 1993.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before DAVIS and JONES, Circuit Judges, and Parker[1], District Judge.

EDITH H. JONES, Circuit Judge:

Linda W. Burkey Mahaffey, a federal employee, and Carey David Burkey filed suit in 1986 contending that the Government Employees Hospital Association ("GEHA") breached its contractual agreement to pay Carey David Burkey's medical bills. They were awarded recovery under Louisiana law, which authorizes damages and attorneys' fees for unreasonable delay in paying health and accident insurance claims. La.Rev.Stat.Ann. 22:657 (West Supp.1992). We hold, contrary to this award, that Louisiana's penalty provision is inconsistent with and therefore preempted by the federal law regulating federal employee health benefits. 5 U.S.C. § 8902(m)(1). We also hold that although Mahaffey did not file a standard claim form with GEHA, she informed the carrier timely and repeatedly of her quest for benefits, both orally and in writing, in substantial compliance with GEHA's contractual provisions concerning the filing of claims. Consequently, the judgment for recovery of medical expenses, though not for statutory penalties and attorneys fees, is affirmed.

BACKGROUND

The facts are recited as found by the district court. On December 17, 1981 plaintiff, Linda

[1]Chief Judge for the Eastern District of Texas, sitting by designation.

Burkey, an employee of the Naval Station in New Orleans, had family coverage for herself and her son, Carey, under a group health policy issued by GEHA as an authorized carrier under the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. § 8901 *et seq.* Carey became 22 on November 19, 1981. On December 17, 1981 Carey was rendered a quadriplegic when he was a passenger in an automobile involved in a collision. Carey was immediately hospitalized at Charity Hospital in New Orleans, just three days before the 31st day after his 22nd birthday. Charity Hospital treated him continuously during his inpatient hospitalization from December 18, 1981 to June 1983.

Regulations of the federal Office of Personnel Management, which superintends FEHBA, 5 C.F.R. Part 890, and the GEHA policy provide that Carey was covered until age 22 and that he was entitled to a 31-day extension thereafter. In addition, if he were hospitalized on the 31st day of that extension, he was entitled to 60 days coverage for continuous hospitalization. 5 CFR 890.401. February 18, 1982 was the 63rd day of Carey's continuous hospitalization after his injuries; from December 17 until February 18, Carey's medical expenses at Charity were $44,693.00.

Immediately upon learning of her son's serious condition, Mrs. Burkey contacted her employer seeking confirmation that Carey was covered by GEHA so he could be transferred to a private hospital specializing in treatment of spinal cord injuries. Despite her own contact with GEHA verbally and through her employer and her repeated written pleas for help, Burkey never received that confirmation. Her son continued on public assistance at Charity. On June 1, 1982, Linda Burkey prepared for her lawyer to submit to GEHA its claim form E-1 seeking confirmation that Carey's medical needs as a result of his 1981 injury were covered. The E-1 was received by GEHA before June 25, 1982. In response to her E-1, plaintiff received a GEHA form F-012 stating only, "children are covered until age 22," without further explanation.[2] When, in late 1982, Mrs. Burkey received a copy of GEHA's "open season" announcement that referenced the 31-day extension following a person's 22nd birthday, she wrote to GEHA's claim office and inquired whether Carey was entitled to the 31-day extension of coverage. Her letter advised GEHA of all pertinent facts needed to

---

[2]GEHA argues that this letter referred not to the June, 1982 E-1, but to an earlier claim filed by Mrs. Burkey. The trial court found against GEHA on this point.

determine whether or not Carey was entitled to medical services: (a) Carey severed his spinal cord in a December 1981 accident; (b) GEHA refused coverage and Carey had been in Charity Hospital continuously since that time; (c) she had sent an E-1 to GEHA in June 1982; (d) she had received form F-012 from GEHA apparently denying Carey's entitlement to coverage because he was over age 22. GEHA did not respond to plaintiff's letter.

On December 23, 1982, Mrs. Burkey again wrote to GEHA's claim office addressing her letter to its President, Mr. Rowland. She enclosed copies of her E-1 and GEHA's F-012 denying coverage. On December 23, Mrs. Burkey also wrote to Congresswoman Lindy Boggs and outlined the difficulties with GEHA. Because Carey's insurance benefits were never confirmed by GEHA, Carey was never transferred to a private specialty hospital.

GEHA's trial representative testified that if she had received the E-1 and Mrs. Burkey's letters referred to above, she would have investigated the claim. She testified that it is not always a prerequisite to confirming coverage that a bill for medical services be received because in certain circumstances a bill may not be available to a plan participant until quite some time later. While admitting that Carey had hospitalization coverage from December '81 through February '82, she also agreed that once GEHA received Burkey's E-1, it had all the authority it needed to request bills directly from Charity.

Having found out about the Burkeys' lawsuit against GEHA, Louisiana's Department of Health and Human Resources ("DHHR") intervened to assert its interest in the claim for medical expenses incurred by Charity Hospital. The case was tried to the court without a jury on March 21, 1991. At the conclusion of the trial, the court gave oral reasons for judgment in favor of plaintiffs under the Louisiana statutory penalty provision, and it remanded to a magistrate judge for an evidentiary hearing to determine reasonable attorneys' fees and the amount of medical bills. The magistrate judge recommended that $40,000 in attorneys' fees were reasonable and that $44,693 be recognized as the actual amount of medical expenses due. The court initially entered judgment in favor of the Burkeys for twice the amount of medical expenses plus attorneys' fees of $40,000. After revising the judgment to recognize the intervenors' interest, the final damage award against GEHA

remained $129,386, but $44,693 of that amount was ordered to be paid to DHHR and twenty-five percent of the $40,000 attorneys fees was ordered payable to the plaintiffs' former attorneys, who had also intervened.

The Burkeys and GEHA have appealed, but neither DHHR nor the attorney intervenors have done so. GEHA asserts that the district court incorrectly interpreted the scope of FEHBA preemption and therefore improperly applied Louisiana law in assessing coverage and awarding damages and attorneys fees. Further, GEHA claims that the substantive finding of coverage was incorrect under the GEHA plan. We agree with GEHA's preemption argument but disagree with its contention that plaintiffs' expenses were not covered by the plan because no complete claim form was filed. The Burkeys are thus entitled to recover only the stipulated expenses of $44,693 incurred at Charity Hospital, together with pre- and post-judgment interest, subject to the intervention judgment awarded DHHR by the district court.[3]

## DISCUSSION

While one federal circuit court has held otherwise concerning the scope of FEHBA preemption of state law, "The weight of authority and most persuasive analysis supports the position that state law claims are preempted".[4] *Federal Plaza Medical Associates v. Palermino,* 1991 WL 29201 (S.D.N.Y.). Federal preemption of state law is fundamentally "a question of Congressional intent ..." *English v. General Elec. Co.,* 496 U.S. 72, 78, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990) (citation omitted). Congress expressed itself with unusual clarity in 5 U.S.C. § 8902(m)(1),

---

[3]Prejudgment interest is authorized by *West v. Harris,* 573 F.2d 873, 882 (5th Cir.1978), *cert. denied,* 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979). Contrary to the Burkeys' request, costs cannot be awarded them at this late date because they did not timely request an award under the district court's rules. Local Rule 5.04E, Louisiana Uniform District Court Rules; *Assoc. Builders and Contractors of La., Inc. v. Orleans Parish School Board,* 919 F.2d 374, 380 (5th Cir.1990) (discussion the application of local rule 5.04(e) absent explicit federal preemption).

[4]*Compare Blue Cross & Blue Shield of Florida, Inc. v. Department of Banking & Finance,* 791 F.2d 1501, 1505 (11th Cir.1986) (state law is preempted to the extent it conflicted with federal employees benefits); *Myers v. United States,* 767 F.2d 1072, 1074 (4th Cir.1985) (state law which purports to allow recovery of additional benefits not contemplated by federal insurance contract must be deemed inconsistent with and preempted by FEHBA); and *Tackitt v. Prudential Insurance Co.,* 758 F.2d 1572, 1575 (11th Cir.1985) ("the interpretation of health insurance contracts is controlled by federal, not state law") with *Howard v. Group Hospital Service,* 739 F.2d 1508, 1510-12 (10th Cir.1984) (approving state law interpretation of FEHBA provisions).

which states:

> The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or regulation issued thereunder, to the extent that such law or regulation is inconsistent with such contractual provisions.

The policy underlying § 8902(m)(1) is to ensure nationwide uniformity of the administration of FEHBA benefits. *Hayes v. Prudential Insurance Company of America,* 819 F.2d 921, 925 (9th Cir.1987) (citing H.R.Rep. No. 282, 95th Cong., 1st Sess. 1, 4 (1977)), *cert. denied,* 484 U.S. 1060, 108 S.Ct. 1014, 98 L.Ed.2d 980 (1988); *Blue Cross & Blue Shield of Florida v. Department of Banking,* 613 F.Supp. 188, 192-193 (D.C.Fla.1985) (discussion of legislative history of the preemption provision of FEHBA) *aff'd* 791 F.2d 1501 (11th Cir.1986), *reh. denied,* 797 F.2d 982 (11th Cir.1986); *Hartenstine v. Superior Court,* 196 Cal.App.3d 206, 220, 241 Cal.Rptr. 756, 765 (1987) (discussion OPM's belief that state law claims should be preempted because the imposition of varying state law requirements would undermine the purpose and objectives of the FEHBA), *cert. denied,* 488 U.S. 899, 109 S.Ct. 245, 102 L.Ed.2d 234 (1988).

The Burkeys argue that their state law claim for penalties is not preempted under § 8902(m)(1) because their claim relates to remedies and not to the "nature or extent of coverage or benefits." No such distinction can sensibly be made. Tort claims arising out of the manner in which a benefit claim is handled are not separable from the terms of the contract that governs benefits. *Compare Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1915-16, 85 L.Ed.2d 206 (1985). Moreover, such claims "relate to" the plan under § 8902(m)(1) as long as they have a connection with or refer to the plan, *Blue Cross,* 791 F.2d at 1504. The Supreme Court recently decided that similar language in the Employee Retirement Income Security Act (ERISA) broadly preempts state law tort and contract claims for benefits if they "relate to" ERISA-governed plans. *Pilot Life Insurance Company v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). *See* Gomez, *Preemption and Preclusion of Employee Law Rights by Federal and State Statutes,* 11 Indus.Rel.L.J. 45, 58 n. 90 (1989); *Blue Shield of Florida, supra,* 791 F.2d at 1504; *Bar v. Arkansas Blue Cross & Blue Shield,* 297 Ark. 262, 761 S.W.2d 174, 176 (1988) (finding preemption under FEHBA); *Hayes, supra,* 819 F.2d at 926.

Insofar as the Burkeys' claim for statutory delay damages necessarily refers to GEHA's plan to determine coverage and whether the proper claims handling process was followed, it refers to the plan, "relates to" it and is therefore preempted. Further, preemption is required because imposition of Louisiana's statutory penalties would invariably expand GEHA's obligations under the terms of its plan and would foster interstate conflicts in coverage.

As § 8902(m)(1) preempts the application of Louisiana's statutory penalty provision, so it also contradicts the trial court's sole reliance on Louisiana law, *Fakouri v. Insurance Company of North America,* 378 So.2d 1083 (La.App.1979), to determine that Mrs. Burkey furnished adequate notice of her claim to GEHA.[5] The proper standard of coverage is whether Mrs. Burkey's efforts to inform GEHA of her claim complied with the contractual provisions at issue. § 8902(m)(1). There is no dispute regarding these efforts, and they were legally sufficient under the contract. GEHA's plan established the following claims procedure:

HOW TO FILE CLAIM

1. After you have incurred covered expenses exceeding the deductible, submit a completed Form E-1 Employee Statement of Claim for reimbursement of covered expenses in excess of the Deductible. Include copies of the bills with your claim to show that you met the Deductible. A separate claim form must be submitted for each covered family member.

2. Submit an attending doctor's statement (Form S02). This form must be completed by the principal attending doctor and all items must be answered. If assignment authorizing direct payment to the doctor is desired you should complete and sign the upper portion of Form S-2. A Form S-2 need not be completed by any other attending doctor unless requested by the Plan.

3. If you wish to authorize direct payment to a hospital, show your identification card upon admission. The hospital completes their own form or will send an itemized statement to the Government Employees Hospital Association (GEHA). If you do not wish to authorize direct payment to a hospital, see 4.

4. Submit hospital and doctor bills itemized to show—

Name of the person for whom service was rendered

Name of the attending doctor and/or admitting hospital

Date charge was incurred, statement of the diagnosis or treatment given and amount of the charge.

---

[5]The timeliness of Mrs. Burkey's "claim" is undisputed because of GEHA's liberal deadlines.

GEHA contends that Mrs. Burkey's E-1, prepared in June, 1982, was fatally incomplete because it included no bill for medical services rendered by Charity Hospital and no specific information on Carey's injury. Although this is correct as far as it goes, the trial court implicitly found, and we agree, that filing a "claim" under the GEHA plan does not invariably require the attachment of medical bills. Further, Mrs. Burkey's E-1, taken together with her two letters in December 1982—still within the period for filing a timely GEHA claim for December, 1981 services rendered to Carey—furnished sufficient information concerning the claim to require GEHA to investigate and inquire. It is both unrealistic and insensitive of GEHA to assert, as it implicitly does, that *only* a letter-perfect filled-in claim form, complete with exhibits, will satisfy its contractual claim filing procedures. The contract says no such thing. The evidence that Carey had been covered, that he had suffered a serious injury, and that he had just barely become 22 at the time of his hospitalization required GEHA, given the coverage provisions of its plan, to treat Mrs. Burkey's communications as a claim.

In this connection, we fully endorse the district court's comments:

We are not dealing with technicalities. It seems to me we're dealing here with matters of just plain common sense and human decency. Even a brief contact to this lady in response to her letters, if somebody had just read their mail, would have resolved the problem and none of us would [be] in this Court today.

GEHA additionally argues that the Burkeys failed to exhaust administrative remedies by not seeking OPM review of GEHA's inaction pursuant to 5 C.F.R. § 890.105 (1991). The Eleventh Circuit recently held that this regulation creates an exhaustion requirement. *Kobleur v. Group Hospitalization and Med. Serv's, Inc.,* 954 F.2d 705, 709-10 (11th Cir.1992). While we generally agree with *Kobleur, Kobleur* arrives too late to affect the Burkeys' case. The district court and the amicus brief filed by OPM properly conclude that applying an exhaustion doctrine now would be a waste of resources.

## CONCLUSION

Based on the above discussion, we vacate that portion of the judgment based on Louisiana's statutory penalty law and revise it downward to a total of $44,693 plus pre- and post-judgment interest. This judgment remains subject to the intervention award to DHHR, however.

AFFIRMED in Part, REVERSED in Part.