1997 OK 88

**David KINCADE, a minor child, By and Through his mother and next friend, Rebecca LINVILLE, and Rebecca Linville, individually, Appellants,**

v.

**GROUP HEALTH SERVICES OF OKLAHOMA, INC., an Oklahoma corporation, d/b/a Blue Cross and Blue Shield of Oklahoma, an Oklahoma corporation, Appellee.**

No. 87302.

Supreme Court of Oklahoma.

July 1, 1997.

Rehearing Denied Oct. 7, 1997.

David Little, Jo L. Slama, McCaffrey & Tawwater, Oklahoma City, and Joe E. Lankford, Norman, for Appellants.

Page Dobson, J.R. "Randy" Baker, Holloway Dobson Hudson Bachman Alden Jennings & Holloway, Oklahoma City, for Appellee.

ALMA WILSON, Justice:

¶1 The appellants, David Kincade and his mother, Rebecca Linville, (Kincade) sued the appellee, Group Health Services of Oklahoma, Inc., an Oklahoma corporation, d/b/a Blue Cross and Blue Shield of Oklahoma, an Oklahoma corporation (Blue Cross) for bad faith refusal to pay a valid claim and tortious interference with a physician-patient relationship. Blue Cross moved to dismiss for failure to state a claim upon which relief can be granted.[1] Concluding that state tort claims are preempted by the Federal Employees Health Benefit Act, (FEHB),[2] the district court dismissed Kincade's petition and the Court of Civil Appeals affirmed. The dispositive question is whether the FEHB preempts state-law causes of action. We answer in the negative. We hold that the district court erroneously dismissed Kincade's petition and reverse and remand.

¶2 David Kincade was eleven-and-one-half-years-old and lived with his mother, who was divorced from his father. Almost immediately following the divorce of his parents, Kincade began showing signs of stress, depression and compulsive behaviors. Kincade's mother sought an evaluation and possible treatment at a psychiatric hospital. A board-certified psychiatrist diagnosed Kincade as suffering from an excessive compulsive disorder and recommended in-patient treatment. Kincade was covered by his father's federal employees' health insurance. The coverage and benefits of Kincade's federal health insurance had been contracted between the United States Office of Personnel Management (OPM) and Blue Cross and selected by his father, pursuant to the FEHB. Kincade was admitted to the psychiatric hospital and a claim was submitted to Blue Cross for hospitalization authorization and Blue Cross denied the claim. The psychiatrist, who diagnosed Kincade, wrote a letter asking Blue Cross to reconsider, emphasizing the medical necessity of the hospitalization. Blue Cross again denied the claim, stating it would pay the insurer's share of out-patient treatment. Because neither parent could afford the cost of in-patient treatment, Kincade was discharged from the hospital.

¶3 After one and one-half weeks in an out-patient program, Kincade's condition worsened dramatically. His behavior became suicidal and self-destructive, in that he slit his wrists, scraped the skin off his thigh, and stabbed himself with sharp objects. He was readmitted to the hospital and again authorization for the hospitalization was sought. Blue Cross again denied authorization. The psychiatrist again wrote a letter asking Blue Cross to reconsider, but Blue Cross again denied the claim on the basis of no medical necessity. Kincade was treated at the hospital, as an in-patient for approximately six weeks, which was apparently subsidized by the state, and Blue Cross terminated its contract with Kincade's psychiatrist.

¶4 Kincade's mother filed this suit alleging Blue Cross breached its duty of good faith in its dealings with its insured and wrongfully interfered with the physician-patient relationship. Blue Cross filed motions to dismiss Kincade's claims for relief, to hold the proceedings in abeyance pending exhaustion of administrative remedies, and to grant summary judgment regarding the issue of defendants' liability for bad faith denial of benefits. The district court dismissed the suit with prejudice, without addressing Blue

---

**1.** 12 O.S.1991, § 2012(B)(6).

**2.** 5 U.S.C. §§ 8901–8914.

Cross' motion to hold the proceedings in abeyance pending exhaustion of administrative remedies or its motion for summary judgment.

¶ 5 The district court found that Kincade's tort claims "relate to a health benefit plan" governed by FEHB and concluded that 5 U.S.C. § 8902(m)(1) of FEHB preempts state-law causes of action. The Court of Civil Appeals concluded that Kincade's tort claims are inseparable from the terms of the FEHB contract and that Congress' mandated uniformity of benefits and cost containment, under the FEHB, can be effective only if state-law causes of action are preempted. In affirming the district court's dismissal, the Court of Civil Appeals specifically refused to follow *Howard v. Group Hospital Service,* 739 F.2d 1508 (10th Cir.1984), wherein the United States Court of Appeals for the Tenth Circuit determined that denial of an individual claim for benefits based on lack of medical necessity is a private controversy even though the rights are created by federal contract pursuant to the FEHB and the federal district courts have no federal question jurisdiction over the private controversy. We previously granted certiorari to review the unsettled question of federal law.

¶ 6 At issue is the express preemption in 5 U.S.C. § 8902(m)(1). The fundamental question is what is the scope of the preemption expressed in § 8902(m)(1). The United States Supreme Court has enunciated the principles that guide our interpretation of an express statutory preemption.[3] First are the presumptions "that Congress does not cavalierly preempt state-law causes of action" and that state power is not superseded "unless that was the clear and manifest purpose of

Congress."[4] Second is the cardinal rule that " '[t]he purpose of Congress is the ultimate touchstone' in every preemption case."[5] Congressional purpose and intent is to be discerned from the statutory language and its legislative history, and the statutory framework and surrounding regulatory scheme.[6]

¶ 7 We begin with the statutory language of 5 U.S.C. § 8902(m)(1), which, on its face, clearly expresses a limited preemption. Title 5 U.S.C. § 8902(m)(1) reads:

The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans to the extent that such law or regulation is inconsistent with such contractual provisions.

¶ 8 This preemption language was not in the original Federal Employees' Health Benefits Act of 1959, codified in chapter 89 of title 5, United States Code, which established the FEHB program to provide health insurance coverage for federal employees and annuitants and their dependents. The FEHB sets forth basic health insurance plan and benefits requirements;[7] authorizes the OPM[8] to negotiate insurance contracts with the various FEHB carriers;[9] requires the FEHB carriers to provide the same benefits for the same premium for all enrollees in a particular insurance plan and establish cost-saving measures;[10] and provides for govern-

**3.** *Medtronic, Inc. v. Lohr,* —— U.S. ——, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996); *Allis–Chalmers Corporation v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

**4.** *Medtronic,* —— U.S. at ——, 116 S.Ct. at 2250. The *Medtronic* preemption issue concerned the Food and Drug Act of 1906 and the Medical Device Amendments of 1976, 90 Stat. 539. The Court observed that these presumptions are consistent with the principles of federalism and the historic primacy of state regulation in the area of health and safety. Similarly, the presumptions are consistent with the historic primacy of state regulation in the area of health insurance.

McCarran–Ferguson Act, 15 U.S.C. § 1011 et seq.

**5.** *Id.*

**6.** *Id.*

**7.** 5 U.S.C. §§ 8902–8905.

**8.** OPM is the successor agency to the Civil Service Commission specified in the original FEHB.

**9.** 5 U.S.C. § 8902.

**10.** *Id.*

ment contributions.[11] The FEHB contracts detail the coverage and benefits to be provided by the various plans and the premium costs.

¶ 9 In 1978, Congress added the preemption language to the FEHB.[12] The congressional report issued less than a month before its enactment indicates that Congress purposely limited the preemption so as to clarify the federal government's authority to regulate implementation of the FEHB, while withholding from the federal government the authority to otherwise regulate the application of state insurance law.[13]

¶ The congressional report recognized that state requirements on health insurance conflicted with the contracts of the FEHB carriers [14] and that the states were actively establishing and enforcing health insurance requirements.[15] The Comptroller General recommended that Congress consider legislation to clarify the applicability of state insurance requirements to FEHB contracts,[16] although the Civil Service Commission had taken the position that the FEHB implicitly preempts conflicting state law. In commenting on the proposed subsection (m) to be added to § 8902, the Civil Service Commission acknowledged that the proposed statutory preemption was more limited than the position it had taken on preemption, but recommended its adoption because it would be an immediate and permanent solution to maintaining uniformity of benefits to all enrollees.[17]

¶ 10 The preemption statute provides that FEHB contract provisions "which relate to the nature or extent of coverage or benefits" shall preempt any inconsistent state law. Blue Cross contends that this language was intended to preempt all state-law causes of action, however as noted earlier, the legislative history reveals otherwise. We think Congress intended to limit the preemption to the problem at hand—uniformity in the services covered in any one plan. The problem addressed by Congress—the purpose of the preemption—was the inconsis-

---

11. 5 U.S.C. § 8906.

12. P.L. 95–368 approved September 17, 1978, published at 92 Stat. 606 and codified at 5 U.S.C. § 8902(m).

13. Senate Report No. 95–903, passed August 25, 1978, published at 1978 U.S.Code Cong. and Adm.News, pp. 1414–1420.

14. The Background section in Senate Report No. 95–903 explains:

States have established health insurance requirements that conflict with the provisions of the FEHB contracts, such as requiring recognition of certain practitioners not covered by Federal employees' health benefits plans. Many States have not attempted to enforce their requirements that conflict with the FEHB plans. In other States, the carriers have been successful in convincing the States that the Federal employees' plans are exempt from State requirements. Other States have enforced their requirements but have not done so uniformly for all carriers in the Federal program.

For example, the Indemnity Benefit Plan (Aetna) pays for chiropractic services in Nevada as required by State law, but does not pay for such services in any other State. Six employee organization plans pay for chiropractic services only in New York and Montana where State law requires coverage for such services. The Service Benefit Plan has been required to pay for these services only in Maryland and Oklahoma. Even in the States that have enforced conflicting requirements, few Federal enrollees are aware of the States' requirements, and, as a result, most enrollees do not attempt to obtain reimbursement for chiropractic services.

As a result of this situation, officials of the Civil Service Commission asked the General Counsel of the Commission to review the law and furnish legal opinion on the question of the dominance of the Federal Employees' Health Benefits law over State and local laws. The General Counsel's conclusion was that, based on the supremacy clause of the Constitution, the Federal Employees' Health Benefits law preempts State and local laws in this area. 1978 U.S.Code Cong. and Adm.News, pp. 1414–1415.

15. The health insurance carriers had to comply with the state requirements in order to maintain their state license or to be state licensed in order to secure a FEHB contract. 1978 U.S.Code Cong. And Adm.News, p. 1418.

16. The conflicts were documented by the Comptroller General in a 1975 report to Congress entitled "Conflicts Between State Health Requirements and Contracts of the Federal Employee Health Benefits Carriers." 1978 U.S.Code Cong. And Adm.News, p. 1414.

17. 1978 U.S.Code Cong. And Adm.News, p. 1415.

tent state-law requirements that destroyed, from state to state, the uniformity in services covered under the FEHB contracts, such as requiring recognition of certain practitioners not covered by the FEHB contracts. We find nothing in the language of the preemption statute, nor in its most recent legislative history, that reveals an intent to preempt state-law causes of action that may arise in the performance of a health insurance plan contracted under the FEHB.[18] That is, neither the statute nor its history show that the preemption of state-law causes of action was a "clear and manifest purpose of Congress" in enacting § 8902(m)(1). Accordingly, we reject Blue Cross' argument that state-law causes of action against FEHB carriers are necessarily enveloped in the phrase "relate to *the nature and extent of coverage or bene-fits*" and preempted by § 8902(m)(1).[19]

¶ 11  Notwithstanding the presumption that in our federal system "Congress does not cavalierly preempt state-law causes of action," a slight majority of the federal appeals courts have concluded that state-law causes of action are preempted by § 8902(m)(1).[20] Two opinions, in the minority, demonstrate the diverse approaches to the FEHB preemption issue taken by the federal appeals court. In deciding that the case was not properly removed to the federal district court, *Howard v. Group Hospital Service*[21] concluded that the FEHB created no federal interest in a FEHB contract and hence the controversy was between private parties. On the other hand, *Goepel v. National Postal Mail Handlers Union*,[22] concluded that the FEHB did not provide the

parties with a remedy—the FEHB created no federal statutory cause of action—and therefore the case was not properly removed to the federal district court. These two cases, their careful review of the statutory language and framework and the surrounding regulatory scheme, together with their reasoning, are convincing.

¶ 12  *Howard* began in the Oklahoma district court as an action by an insured to recover damages in tort and contract arising from the insurer's failure to pay claims under the FEHB plan. Howard's wife needed treatment for nervous and mental problems and Blue Cross refused to pay based on a lack of medical necessity for the treatment. Blue Cross removed the case to the federal district court, alleging federal question jurisdiction and Howard moved to remand to state court. The federal district court denied the remand and the case was tried to a jury. The jury awarded Howard a verdict in the amount of $1,649.00. Howard appealed. The Tenth Circuit found that the federal district court did not have subject matter jurisdiction, returned the case to the lower federal court and ordered that the case be remanded to the state court.

¶ 13  In *Howard*, Blue Cross argued that federal law should apply to the interpretation of the medical necessity provision to promote uniformity of decision and interpretation of the contract because a federal agency is a party to the FEHB contract, citing *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943). Finding that

---

**18.** Oklahoma imposes the duty of good faith dealings upon the insurer/insured relationship and recognizes that a tort may arise out of the bad faith breach of an insurance contract. *Christian v. American Home Assurance Company*, 577 P.2d 899 (Okl.1977).

**19.** See, *Medtronic*, —— U.S. at ——, 116 S.Ct. at 2251, wherein the U.S. Supreme Court rejected, as implausible, the argument that Congress intended "requirement" to preempt all state-law claims in 21 U.S.C. § 360(a) which provides that "no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement (1) which differs from, or in addition to, any requirement applicable under this chapter to the devise...."

**20.** *Caudill v. Blue Cross and Blue Shield of North Carolina*, 999 F.2d 74 (4th Cir.1993), *Burkey v. Government Employees Hospital Association*, 983 F.2d 656 (5th Cir.1993), *Harris v. Mutual of Omaha Companies*, 992 F.2d 706 (7th Cir.1993), *Nesseim v. Mail Handlers Benefit Plan*, 995 F.2d 804 (8th Cir.1993), *Hayes v. Prudential Insurance Company of America*, 819 F.2d 921 (9th Cir. 1987), *Blue Cross & Blue Shield of Florida v. Department of Banking*, 791 F.2d 1501 (11th Cir. 1986).

**21.** 739 F.2d 1508 (10th Cir.1984).

**22.** 36 F.3d 306, 312 n. 7 (3rd Cir.1994), *cert. denied*, 514 U.S. 1063, 115 S.Ct. 1691, 131 L.Ed.2d 555 (1995).

the outcome of the case would have no direct effect on the U.S. Treasury, *Howard* concluded that Blue Cross' reliance on *Clearfield* was misplaced.

¶ 14   *Howard* recognized that if diverse resolutions of a controversy would frustrate the operations of a federal program, conflict with a specific national policy, or have some direct effect on the United States or its treasury, then federal law applies.[23]   Considering the language of the statute, *Howard* gleaned "no indication that any law of Oklahoma conflicts with the medical necessity or any other provision of the Blue Cross contract."[24]   *Howard* observed that the court could not see how various state court adjudications of FEHB benefits claims would frustrate the operation of that program or conflict with a specific national policy.[25]   The *Howard* court further determined that the review procedure set up in the FEHB was designed to permit the OPM to resolve major conflicts between itself and the carrier over interpretation of the plan.[26]   Recognizing that the OPM acted as an agent in negotiating and procuring the health insurance plan, the *Howard* court also concluded that the rights created under the FEHB contract were, nevertheless, private rights belonging to the participants.[27]   *Howard* said:

> "[I]n the case at bar the federal government is responsible for contracting for or approving health benefits plans, 5 U.S.C. § 8903, but the FEP [FEHB] would not be significantly hindered by different state law interpretations of the medical necessity provision in the Blue Cross plan nor would disputes regarding those provisions involve anyone but private litigants."

*Howard*, 739 F.2d at 1511.

¶ 15   In *Goepel*, the insurance carrier determined that a chemotherapy treatment fol-lowed by peripheral stem cell infusion (HDC/APCR) for metastatic breast cancer was not covered by the FEHB insurance plan.   Goepel's Congressman wrote a letter to OPM on their behalf and OPM responded that the treatment was explicitly excluded from the plan.[28]   Goepel sued the FEHB carrier in the Superior Court in New Jersey. The insurance provider filed notice of removal to federal court on the grounds that the breach of contract claim arises under the laws of the United States and the other state law claims were inextricably intertwined. Goepel filed a motion to remand on the grounds that the suit was a private contract dispute.   The federal district court ruled against Goepel on the motion and the merits. On appeal, the Court of Appeals for the Third Circuit vacated and remanded the case to the district court with instructions to remand the case to the state court.   Following established rules of federal question jurisdiction, the *Goepel* Court concluded that the FEHB did not completely preempt state law claims and neither the federal preemption defense nor the fact that the defendant might ultimately show that the state claim is preempted warranted removal to federal court.   *Goepel* determined there is no preemption in the area of FEHB health insurance and plans unless there is a conflict between the particular state law being relied upon in the litigation and a specific provision in a FEHB contract.[29]

¶ 16   The *Goepel* opinion expressly recognized that the outcome is consistent with *Howard*, even though *Goepel* also recognized that a slight majority of the other circuit courts had resolved the removal issue finding that state law claims are preempted by the FEHB.[30]   In remanding the case, the *Goepel* Court said:

---

23.   *Howard*, 739 F.2d at 1510–1511.

24.   *Howard*, 739 F.2d at 1510, n. 1.

25.   *Howard*, 739 F.2d at 1511.

26.   Id.

27.   *Howard*, 739 F.2d at 1512.

28.   The parties in *Goepel* had stipulated that the letter from the Congressman satisfied any exhaustion of administrative remedies requirement.

29.   *Goepel*, 36 F.3d at 312 n. 7.

30.   See *Goepel*, 36 F.3d at 315–316.   The count at the time *Goepel* was handed-down, was that six of the eleven circuits had sustained removal of actions against FEHB insurance providers from state to federal court on the basis of congressional preemption.   *See* footnote 20, supra.

"The Plan is free to raise preemption as a defense in state court, and our holding that the FEHBA does not completely preempt the Goepel's state law claims so as to permit removal of this action does not prejudge the merits of such a claim. 'State courts are competent to determine whether state law has been preempted by federal law,' [*Railway Labor Executives Ass'n v. Pittsburgh and Lake Erie R.R. Co.,* 858 F.2d 936, 942 (3rd Cir.1988) ], and absent complete preemption, 'they must be permitted to perform that function' with regard to state law claims brought before them...."

*Goepel,* 36 F.3d at 316.

¶ 17 Congress has expressly preempted state law that is inconsistent with the benefits and coverage provisions of a FEHB contract. However, the FEHB does not authorize a scheme of federal regulation that is so pervasive that we must infer Congress left no room to supplement it. Likewise, there has been no showing that the instant state-law causes of action actually conflict with federal law to the extent that compliance with both is a physical impossibility; nor that state-law causes of action constitute an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.[31] Nothing in the legislative history indicates that Congress intended to preempt the states' right to provide traditional damages remedies for violation of common-law duties when those duties parallel federal requirements.[32] We reach the same result as *Howard* and *Goepel.* We do not find Kincade's state-law causes of action to be contradictory to the provisions of FEHB.

¶ 18 We observe that after the Kincade's petition was filed in district court, the OPM significantly changed its regulations. The record reveals that the petition was filed in district court on February 9, 1995. On March 29, 1995, OPM issued interim regulations regarding suits to recover benefits claimed under FEHB plans. These changes are found at 5 C.F.R. §§ 890.105 and 890.107. In both versions the FEHB carrier initially adjudicates claims filed under the plan. Both versions permit the enrollee to ask the carrier to reconsider its denial of a claim and permit the enrollee to ask OPM to review the claim. The substantial change is that the former version specified that any suit to recover a claim for health benefits must be brought against the carrier, while the interim version requires suit to be brought against OPM and limits recovery in such a lawsuit to the amount of benefits claimed under the plan.[33]

¶ 19 Both *Goepel* and *Howard* considered the administrative scheme created by the OPM regulations in the respective holdings made by those courts. An Iowa district court, because of the new regulations, has declared the *Goepel* decision outdated. *Hanson v. Blue Cross Blue Shield of Iowa,* 953 F.Supp. 270, 275 n. 4 (N.D.Iowa 1996). Conversely, a New Mexico federal district court acknowledges that some courts have interpreted the regulations to create a mandatory administrative process over which federal district courts have been limited to reviewing decisions of the OPM for arbitrariness, but nevertheless finds *Howard* to continue to be good law. *Roux v. Lovelace Health System,* 947 F.Supp. 1534, 1541, n. 6 (D.N.M.1996). The *Roux* court reasoned that the critical statutory provisions, 5 U.S.C. §§ 8902(m)(1) and 8912, on which *Howard* relied, had not

---

**31.** We have previously considered the extent of federal preemption on our state law and concluded that there are four instances that we recognize as preempting Oklahoma law: (1) Where Congress expressly preempts state law; (2) Where a scheme of federal regulation is so pervasive that we must infer Congress left no room to supplement it; (3) Where state law actually conflicts with federal law to the extent that compliance with both is a physical impossibility; and (4) Where state law is an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Missouri–Kansas–Texas R. Co. v. State,* 712 P.2d 40, 46–47 (Okla.1985).

**32.** *Medtronic,* —— U.S. at ——, 116 S.Ct. at 2255.

**33.** The interim regulation included a supplementary information section which provides that judicial review is limited to the OPM record and decision affirming the carrier's denial of benefits and that judicial review is controlled by federal rather than state law.

been amended.[34] We are not persuaded that the change in the rules expands the scope of the FEHB preemption or otherwise affects the rationale of either *Howard* or *Goepel.*[35]

¶ 20 The United States Supreme Court has not decided the extent of the preemption of the FEHB. The Supreme Court, however, has repeatedly recognized that state remedies may co-exist with a scheme of federal remedies.[36] Accordingly, we determine that an action for damages caused by a bad faith breach of contract is not clearly preempted by the provisions of the FEHB and the action may be maintained in the state district court against a FEHB insurance carrier.

¶ 21 Because this lawsuit was dismissed for failure to state a claim upon which relief could be granted, the court did not consider the motion to hold the proceedings in abeyance pending exhaustion of administrative remedies, or the motion for summary judgment made by the defendants. Accordingly, we will not address those motions. On remand, the parties are free to re-urge previously filed motions. The opinion of the Court of Civil Appeals is VACATED, and the judgment of the district court is REVERSED and REMANDED.

KAUGER, C.J., and SUMMERS, V.C.J., and SIMMS, OPALA and WATT, JJ., concur.

HODGES, LAVENDER and HARGRAVE, JJ., dissent.

**34.** *Roux,* 947 F.Supp. at 1541. *See also Wormack v. Southeastern Mut. Ins. Co.,* 907 S.W.2d 163 (Ky.Ct.App.1995).

**35.** We decline to speculate on the effect of the interim rules adopted after the insurance carrier denied Kincade's requests for authorization for hospitalization, if any.

**36.** *Dority v. Green Country Castings Corporation,* 727 P.2d 1355, 1360 (Okla.1986).