**Peter NEGRON, et al., Plaintiffs,**

v.

**Nilesh PATEL, M.D., et al., Defendants.**

**No. Civ.A. 97–4366.**

United States District Court,
E.D. Pennsylvania.

May 7, 1998.

William E. Haggerty, McIntyre Law Firm, Lancaster, PA, Thomas W. Hall, Atlee & Hall, Lancaster, PA, for Peter Negron, Pedro Negron, Rafaela Negron.

Kevin H. Wright, Wright, Young & McGilvery, Blue Bell, PA, Kenneth J. Sykes, William J. Cooper, Mark F. BiGiovanni, Jacobson, Maynard, Tuschman and Kalur, Blue Bell, PA, Jonathan D. Herbst, Margolis Edelstein, Philadelphia, PA, for Nilesh V. Patel, M.D.

Peter J. Hoffman, McKissock & Hoffman, P.C., Philadelphia, PA, Kevin H. Wright, Wright, Young & McGilvery, Blue Bell, PA, Jonathan D. Herbst, Margolis Edelstein, Philadelphia, PA, Robert Caplan, Jacobson, Maynard, Tuschman and Kalur, Blue Bell, PA, for Natu R. Patel, M.D.

Kevin H. Wright, Wright, Young & McGilvery, Blue Bell, PA, for Jerald C. Fingerhut, M.D., Philip J. Digiacomo, Jr., M.D., David Trumbore, M.D.

Kathleen M. Kramer, Marshall, Dennehey, Warner, Coleman and Goggin, Philadelphia, PA, for Montgomery Hosp.

Richard M. Simins, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for Aetna U.S. Healthcare, Inc., U.S. Healthcare Systems, Inc., U.S. Healthcare, Inc., U.S. Healthcare Systems of Pennsylvania.

Daniel F. Ryan, III, O'Brien & Ryan, Plymouth Meeting, PA, Mary Ann Martillot-

ti, Plymouth Meeting, PA, for Paul R. Casey, M.D.

## OPINION

### LOUIS H. POLLAK, District Judge.

In this diversity case, plaintiffs [1] have filed a complaint against a number of doctors, a professional association, a hospital, and a health maintenance organization group, Aetna U.S. Healthcare ("the HMO"). Plaintiffs allege that the defendants provided Peter Negron—who was covered at all relevant times by a health plan that is within the ambit of the Federal Employees Health Benefits Act ("FEHBA")—with inadequate care when he was taken to Montgomery Hospital on several occasions complaining of serious gastrointestinal problems. According to the complaint, these problems were ultimately determined to have been caused by salmonella poisoning. Plaintiffs allege that the defendants' inadequate medical care resulted in Negron's condition worsening severely, resulting in, inter alia, brain damage, the partial amputation of one foot, and paralysis. The complaint raises numerous tort, contract, and statutory theories for relief. The HMO moved to dismiss all counts against it. On April 21, 1998, I heard oral argument on this motion. Upon consideration of counsels' briefs and arguments, and for the reasons set forth below, the HMO's motion will be granted in part and denied in part.

### Discussion

The HMO argues that all of the state-law claims plaintiffs have raised against the HMO, which make up Counts XIX–XXVIII of the complaint, are preempted under the Federal Employees Health Benefits Act (FEHBA), 5 U.S.C. § 8902(m)(1). FEHBA was enacted in 1959 to provide health insurance coverage for federal employees and their dependents. The statute sets forth basic requirements for health benefit plans and authorizes the Office of Personnel Management (OPM) to contract with carriers to provide health insurance to federal employees, with the requirement that the carriers provide to FEHBA plan participants the same

benefits for the same premium with respect to a given plan. 5 U.S.C. § 8902(a)–(1).

Congress enacted FEHBA's preemption provision (now codified at 5 U.S.C. § 8902(m)(1)) in 1978, out of concern that the application of state insurance regulations would result in a FEHB carrier providing disuniform benefits under a single plan, as between states with differing insurance schemes. See S.Rep. No. 903, 95th Cong., 2d Sess.1978, reprinted in 1978 U.S.C.C.A.N. 1413; H.R.Rep. No. 282, 95th Cong. 1st Sess.(1977). FEHBA's preemption provision reads:

> The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans to the extent that such law or regulation is inconsistent with such contractual provisions.

5 U.S.C. § 8902(m)(1). Accordingly, the statute contemplates a two-step inquiry: (1) whether the state law at issue "relates to health insurance or plans," and, if so, (2) whether the state law is inconsistent with the provisions of the FEHBA contract at issue.

The HMO argues that all of plaintiffs' claims against it "relate[ ] to health insurance or plans" and are "inconsistent with" the contract. Specifically, the HMO points to the following contractual provision:

> Federal law exclusively governs all claims for relief in a lawsuit related to this plan's benefits or coverage or payment with respect to those benefits. As provided under the agreement between this plan and the Office of Personnel Management, judicial action on such claims for relief is limited to a review of OPM's final decision to determine if it is arbitrary and capricious under the terms of this statement of benefits. Damages recoverable in such lawsuits are limited to the amount of this Plan's contract benefits in dispute, plus simple prejudgment interest . . . and court costs.

---

1. Plaintiffs are: Peter Negron, by his next friend Rosalie Alicio, as well as Pedro and Rafaela Negron, Peter Negron's parents.

According to the HMO, all of the claims relate to "health insurance or plans" because they implicate the plan and because the HMO would not be involved in this lawsuit but for the insurance plan that covered Peter Negron. The HMO further argues that all of plaintiffs' claims against it are inconsistent with the contract—in particular with the provision quoted above—because plaintiffs are seeking damages other than the simple contract damages provided for in the contract.

The extent of FEHBA's preemptive reach is an unsettled question within this circuit. *See Goepel v. National Postal Mail Handlers Union,* 36 F.3d 306 (3d Cir.1994) (holding that the FEHBA does not confer removal jurisdiction under the "complete preemption" doctrine but leaving open the question of FEHBA's "conflicts preemption"). Case law on conflicts preemption under § 8902(m)(1) within this circuit is sparse; my researches have yielded only one case: *Furey v. U.S. Healthcare,* No. 91–1072 (E.D.Pa.1991) (holding state-law tort and contract claims not preempted on the ground that "defendant has not shown how they are inconsistent with the contract").

Some courts outside this circuit have announced FEHBA preemption principles that sweep very broadly. *See, e.g., Burkey v. Government Employees Hospital Ass'n,* 983 F.2d 656, 660 (5th Cir.1993) ("claims 'relate to' the plan under § 8902(m)(1) as long as they have a connection with or refer to the plan. All appellants' state law claims refer to the plan, and therefore fall under the preemption clause."); *Hayes v. Prudential Ins. of America,* 819 F.2d 921, 926 (9th Cir. 1987) (same); *Fink v. Delaware Valley HMO,* 417 Pa.Super. 287, 612 A.2d 485 (Pa.Super.Ct.1992) (plaintiff's tort claims preempted under FEHBA). However, the authorities do not speak with one voice. *See, e.g., Eidler v. Blue Cross and Blue Shield,* 671 F.Supp. 1213 (E.D.Wis.1987) (bad faith tort claim not preempted by FEHBA); *Kincade v. Group Health Servs. of Oklahoma,* 945 P.2d 485 (Ok.1997) (FEHBA does not preempt state-law tort action for bad faith refusal to pay valid claim).

Certain state laws are more clearly preempted than others. State laws regulat-

ing insurance, which can reasonably be expected to provide coverage or benefits different from those provided for in a FEHBA contract, are apt cases for FEHBA preemption, falling as they do within the core of the concerns animating Congress when it enacted the preemption provision. Thus, claims under state subrogation statutes, *NALC v. Lunsford,* 879 F.Supp. 760 (E.D.Mich.1995), or state laws concerning how unclaimed benefits would be distributed, *Blue Cross and Blue Shield v. Department of Banking and Finance,* 791 F.2d 1501 (11th Cir.1986), present relatively easy cases for preemption.

However, because not all state claims that implicate a FEHBA contract necessarily "relate[ ] to health insurance or plans" and impose inconsistent benefit obligations on a given plan, it is necessary to inquire into the legal bases for each of plaintiffs' claims against the HMO in deciding whether they fall within the preemptive reach of the statute. Because preemption is fundamentally a question of congressional intent, *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992), it is appropriate to consider the purposes of the statute's preemption provision, viz., to ensure uniform benefits under FEHBA plans from state to state. *See* S.Rep. No. 903, 95th Cong., 2d Sess.1978, *reprinted in* 1978 U.S.C.C.A.N. 1413; H.R.Rep. No. 282, 95th Cong. 1st Sess.(1977).

Thus, although the HMO argues for an undifferentiated approach to plaintiffs' claims, broadly holding all of them preempted, a more discriminating approach is in order. To read the preemption provision in the statute so expansively would run contrary to the principle that preemption of claims is not lightly to be presumed, and that doubts be resolved against preemption. *See New York State Conf. of Blue Cross and Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995). Plaintiffs raise ten causes of action against the HMO, arising under distinct legal theories. Accordingly, I will undertake, to the extent that the pleader's art allows, to examine closely the basis for each claim, and to assess to what extent the state law invoked "relates to health insurance or plans"

and is inconsistent with terms of the contract "which relate to the ·nature or extent of coverage or benefits." ·

■ Count XXV of the complaint presents what I characterize above as an easy case for FEHBA preemption. This count is stated under a state insurance statute, 42 Pa.Cons. Stat. § 8371, which provides that if a court finds that an insurance company has acted in bad faith toward an insured, the insured can recover interest on the amount of the claim of 3% over the prime rate, punitive damages, and attorney's fees and costs. This statute is clearly a law that relates to insurance plans in a meaningful way. And because an action under this statute is an action seeking damages other than contract damages for the denial of claims under a FEHBA plan, Count XXV is preempted. *Cf. Garner v. Capital Blue Cross*, 859 F.Supp. 145 (M.D.Pa.1994) (bad-faith claims preempted under ERISA), *aff'd*, 52 F.3d 314, *cert. denied*, 516 U.S. 870, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995).

■ Also presenting a relatively easy case for preemption is Count XXII, alleging breach of contract. If health insurance contracts negotiated pursuant to FEHBA are interpreted under state law, it is reasonably to be expected that differing state contract doctrines may lead to different outcomes with respect to benefits in different states, thereby resulting in the very disuniformity in the provision of benefits that FEHBA's preemption provision was designed to avoid. Thus it is unsurprising that the weight of authority supports the proposition that the interpretation of a FEHBA contract is a governed by federal law. *See Harris v. Mutual of Omaha Cos.*, 992 F.2d 706, 711 n. 1 (7th Cir.1993); *Burkey v. Government Em-*

*ployees Hospital Ass'n*, 983 F.2d 656, 660 (5th Cir.1993); *Hayes, supra; Tackitt v. Prudential Ins. Co.*, 758 F.2d 1572, 1575 (11th Cir.1985). It is also plain to see that the contract at issue here provides that federal law governs claims for benefits under the plan. Therefore, the breach of contract claim both relates to insurance benefit plans in a meaningful way and is inconsistent with the provisions of the plan covering Mr. Negron. Therefore, Count XXII is preempted.

■ Similarly, Counts XXI ("Liability under § 323 Restatement Second of Torts"), XXIII ("Misrepresentation"), XXIV ("Breach of Fiduciary Duty"), XXVI ("Unfair Trade Practices and Consumer Protection Law"), and XXVII ("Fraud") also involve laws that, *in this context*, (1) relate to health insurance benefits or plans, and (2) implicate the contract closely enough that preemption is appropriate. Although the legal theories presented as headings to these counts differ, all of these counts recite claims that the plan failed to live up to its contractual duties in ways that Pennsylvania law would deem inappropriate.[2] Hence these counts essentially state claims for contractual benefits that were not realized and are, therefore, preempted.

■ Count XIX is styled as one for "corporate negligence." This rather compound count alleges that the HMO violated duties owed to plaintiffs by:

a. Failing to properly select and retain only competent physicians to participate in the Defendant's program;

b. Failing to formulate, adopt, and/or enforce adequate rules and policies to reasonably ensure quality care for the Plaintiff;

---

2. Count XXI states that the HMO negligently "undertook to render services to Peter Negron which Defendant should recognize as necessary for his health and protection"—an undertaking that was·contractual in nature. Count XXIII alleges essentially that the HMO negligently or intentionally misrepresented its services; since the only contact alleged between plaintiffs and the HMO is the health insurance plan, it can only be inferred that those representations are the health insurance contract's provisions relating to participating doctors and covered services. To similar effect are Counts XXIV ("By its position of superior knowledge, trust and confidence with

Peter Negron, Defendant has at all times been obligated to exercise appropriate fiduciary duties with respect to Peter Negron and his rights under the policy of health insurance with [sic] provided no fault basic loss coverage"); XXVI (seeking treble damages under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, presumably for the representations contained within the plan), and XXVII (seeking recovery in fraud for the HMO's representations that "a. There is no obligation to pay [Peter Negron's] medical bills; and b. The applicable and settled law of Pennsylvania requires no payment of benefits").

c. Filing to appropriately monitor the quality of care being provided by physicians and facilities who are participants in the program;

d. Offering financial incentives and/or rewards to participating physicians who withhold or forestall adequate testing or prompt referrals. . . .

e. Failing to adequately train and inform participating physicians as to specific provisions of its plan.

As alleged here, this count, too, presents an application of tort law that "relates to insurance plans or benefits" and also implicates the operative plan in a substantial way. These claims seek tort recovery for the HMO's administration of plan benefits and thus run afoul of FEHBA's preemption provision.

■ Count XX of the complaint, bearing the legend "Vicarious Liability," stands on a different footing from the other claims asserted against the HMO. Although case law on the application of FEHBA's preemption provision to medical malpractice claims is not particularly well-developed, there is a considerable body of case law on the subject arising under ERISA. The authorities are divided, but there is substantial support for the proposition that ERISA's broad preemption provision does not preempt vicarious liability claims for medical malpractice. *See, e.g., Pacificare of Oklahoma, Inc. v. Burrage,* 59 F.3d 151, 153–54 (10th Cir.1995); *Lancaster v. Kaiser Foundation Health Plan of Mid–Atlantic States, Inc.,* 958 F.Supp. 1137, 1143 (E.D.Va.1997); *Chaghervand v. CareFirst,* 909 F.Supp. 304 (D.Md.1995); *Kearney v. U.S. Healthcare, Inc.,* 859 F.Supp. 182 (E.D.Pa.1994); *Independence HMO, Inc. v. Smith,* 733 F.Supp. 983 (E.D.Pa.1990). *But*

*see Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482 (7th Cir.1996); *Clark v. Humana Kansas City, Inc.,* 975 F.Supp. 1283 (D.Kan.1997); *Schwartz v. FHP Intern., Corp.,* 947 F.Supp. 1354 (D.Ariz.1996).

I find the reasoning in cases such as *Kearney* and *Pacificare* to be the more persuasive and also find that it applies with at least equal force to FEHBA. The preemption provision in ERISA, like that in FEHBA, calls for an examination of how particular state laws "relate to" the insurance plans that the statute regulates.[3] In *Kearney,* Judge Waldman stated that "[t]he term 'related to' is not to be taken literally but rather must be applied consistent with the policies underlying ERISA."[4] 859 F.Supp. at 186. Finding that claims of vicarious liability for medical malpractice do not meaningfully relate to ERISA plans, Judge Waldman explained:

A determination that a treating physician committed malpractice does not require an examination of the plan to decide whether the service provided was that which was promised. What is required is evidence of what transpired between the patient and physician and an assessment of whether in providing admittedly covered treatment or giving professional advice the physician possessed and utilized the knowledge, skill and care usually had and exercised by physicians in his community or medical specialty. As noted, a claim that one was denied a promised benefit is preempted. A claim that one received a promised service from a provider who performed that service negligently is another matter.

That one may refer to the contents of a plan to adduce evidence that it held out a

---

**3.** It should be noted that ERISA preempts "any and all State laws insofar as they may now or hereafter relate to an employee benefit plan," 29 U.S.C. § 1144(a), while FEHBA adds a further limiting principle: FEHBA preempts state law which "relates to health insurance or plans to the extent that such law or regulation is inconsistent with . . . contractual provisions [relating to the nature or extent of coverage or benefits]." 5 U.S.C. § 8902(m)(1).

**4.** This view has been vindicated in the Supreme Court's most recent pronouncements on the sub-

ject. In *New York State Conf. of Blue Cross and Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 656, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995), and *California Div. of Labor Enforcement v. Dillingham Constr. N.A., Inc.,* 519 U.S. 316, ——, 117 S.Ct. 832, 838, 136 L.Ed.2d 791 (1997), the court has cautioned against utilizing an "uncritical literalism" when deciding the reach of ERISA preemption; rather, the Court instructed, preemption under ERISA is to be determined with reference to the statute's objectives.

particular person as its employee or agent to help sustain a cause of action does not implicate the concerns underlying the ERISA preemption provision . . . . .

A state law vicarious liability claim for malpractice is based on common law tort and agency principles, and does not require a finding that a plan was wrongfully administered or that promised benefits were not provided. To present such a claim, a plaintiff whose employer enrolled him in an HMO would have to show nothing more than would a plaintiff who secured an HMO membership for himself. Unless we are going to create a two track system of justice in which ERISA plan entities operate in "a fully insulated legal world," such a claim should not be preempted. *See United Wire [v. Morristown Mem. Hosp.,* 995 F.2d 1179, 1193 (3d Cir.1993) ] (quoting *Rebaldo v. Cuomo,* 749 F.2d 133 (2d Cir.1984)).

*Kearney,* 859 F.Supp. at 186–87 (footnote omitted); *accord Pacificare,* 59 F.3d at 155.

Plaintiffs' vicarious liability claim is predicated on the idea that Peter Negron was the victim of medical malpractice and that state-law principles of agency or "ostensible agency" impute such negligence to the HMO. I assume for the purposes of this motion that the malpractice occurred and that the agency relationship exists. On these assumptions, the Negrons are seeking to vindicate their rights to ' be free of medical malpractice, rights that are independent of the contract. They are not seeking a contractual benefit through these claims; they are not invoking a state law that can be expected to produce conflicting determinations of plan benefits between and among the states. Accordingly, this claim neither meaningfully relates to health insurance plans or benefits, nor dos it invoke law that is inconsistent with the contract. Nothing in the contract purports to displace medical malpractice law insofar as that law may hold an HMO liable on *respondeat superior* principles. The plan provision limiting recovery in actions for unpaid benefits to simple contract damages plus interest does not speak to this issue. Unlike its siblings, this claim is not, at bottom, a claim for a contractual benefit dressed in another guise. I therefore find that plaintiffs' vicarious liability claims are not preempted.

■ Count XXVII is labeled "negligent infliction of emotional distress." This count lists all of the defendants and states: "the Defendants, by and through their actual or ostensible agents, servants, employees, principals, directors, and/or independent contractors, and/or by themselves, rendered negligent treatment to Peter Negron," which treatment caused Peter Negron's parents to witness his deteriorating condition. I interpret this claim—as it is asserted against the HMO—as one predicated on vicarious liability as well as direct negligence. Accordingly, this count is preempted insofar as it states a direct negligence claim against the HMO, but it is not preempted insofar as plaintiffs appear to be asserting this count as a vicarious claim against the HMO.

■ Finally, the HMO argues, in the alternative, that the complaint against it should be dismissed because plaintiffs failed to exhaust administrative remedies and failed to join OPM, a necessary party to this litigation. To be sure, the regulations promulgated under FEHBA provide, *pro tanto,* for administrative review of OPM benefit determinations, and indicate that lawsuits for unpaid benefits may not be brought prior to exhausting the procedure. *See* 5 C.F.R. §§ 890.107 and 890.105. The regulations contemplate that a claimant first seeks relief with the insurance carrier. If the carrier declines to reconsider its denial of benefits, then the claimant "may ask OPM to review the claim." 5 C.F.R. § 890.105(a)(1). After the OPM reviews the claim, an unsatisfied claimant may then seek judicial review of the OPM's decision. 5 C.F.R. § 890.107(c). As amended in 1996, the regulation states that suit may not be brought prior to exhausting the procedure. 5 C.F.R. § 890.107(d)(1).

Thus the regulations seem to contemplate a mandatory procedure, but only for challenges to a carrier's decision to deny benefits. In this action, plaintiffs' surviving tort claims, however, are not claims for unpaid benefits. They are therefore neither cognizable within the narrow confines of the OPM procedure nor subject to whatever exhaustion requirements might obtain for such

claims. For the same reasons, OPM does not in any way appear to be a party necessary for the just adjudication of this action. Therefore, the HMO's motion to dismiss for failure to exhaust or for failure to join OPM is denied.

*Conclusion*

For the reasons set forth in this memorandum, the HMO's motion is granted in part and denied in part. An appropriate order follows.

*ORDER*

For the reasons given in the accompanying memorandum, it is hereby ORDERED that defendant Aetna U.S. Healthcare, Inc.'s motion to dismiss is GRANTED in part and DENIED in part. Specifically, it is ORDERED that:

1. Counts XIX, XXI, XXII, XXIII, XXIV, XXV, XXVI, and XXVII of plaintiffs' complaint are DISMISSED; and

2. Count XXVIII of the complaint—as asserted against Aetna U.S. Healthcare Inc.—is dismissed insofar as it asserts direct claims of negligence against Aetna · U.S. Healthcare, Inc.